[No. A133897. First Dist., Div. Two. Jan. 30, 2013.]

TIELA CHALMERS, Plaintiff and Respondent, v.
LISA HIRSCHKOP, Defendant and Appellant.

## COUNSEL

Schoenberg Family Law Group, Debra R. Schoenberg and Jennifer L. Knops for Defendant and Appellant.

Tiela Chalmers, in pro. per., for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Tiela Chalmers and Michael F.,[1] the biological parents of Eliana F., entered into a contract to share custody of Eliana. At the time of Eliana's birth, Tiela was in a relationship with Lisa Hirschkop. In 2008, after Tiela and Lisa had terminated their relationship, Lisa filed a request as a stepparent pursuant to Family Code section 3101 for visitation with Eliana.[2] The court's order on October 23, 2008, denied Lisa's petition (the 2008 order), and found that she had failed to meet the burden of proof required to override the parents' joint decision regarding visitation.

Subsequently, the parents further restricted Lisa's access to Eliana and Lisa filed a motion to modify the 2008 order. She also asked the trial court to require Eliana to testify or be examined. The court denied Lisa's request to have then 10-year-old Eliana testify and denied her motion to modify the 2008 order.

Lisa appeals the order denying her request to modify the 2008 order. She claims, among other things, that the trial court did not apply the law correctly and that the court was obligated to conduct an evidentiary hearing. She also contends that the court abused its discretion by terminating jurisdiction over custody issues.

 We hold that a stepparent cannot request a modification of a prior court order that *denied* visitation under section 3101, subdivision (a). Once the trial court denies on the merits a stepparent's request for visitation under section 3101, subdivision (a), no legal authority permits the court to consider

---

[1] Michael was not named as a party to the action.

[2] All further unspecified code sections refer to the Family Code.

a modification of this final order. We also are not persuaded by Lisa's other arguments and affirm the judgment.

## BACKGROUND

Tiela and Michael began meeting with each other to discuss having a baby together by artificial insemination.[3] Michael and Tiela entered into a coparenting contract on April 2, 2000, and agreed to joint legal and physical custody of their child. Michael and Tiela's child, Eliana, was born in 2001.

In March 2000, after Tiela and Michael had agreed to have a baby together, Tiela and Lisa became involved in a romantic relationship. Tiela and Lisa registered as domestic partners in 2003. From 2001 until 2006, Lisa was a stepparent to Eliana.

Tiela and Lisa separated in May 2006. A little less than one year later, in April 2007, Tiela filed a petition in the superior court for dissolution of the domestic partnership. Judgment was entered dissolving the domestic partnership on December 18, 2007.

On January 24, 2008, a little less than one month after judgment was entered dissolving the domestic partnership, Lisa filed a motion for stepparent visitation of Eliana. Lisa filed an amended motion for visitation on August 8, 2008; she also requested attorney fees, costs, and an injunctive order. Tiela opposed the motion and Michael filed a declaration in support of Tiela's opposition to Lisa's motion.

The trial court held a hearing on Lisa's motion on September 16, 2008. Counsel for Lisa argued that Lisa was a stepparent and it was in Eliana's best interests to spend time with her. The court noted that both legal parents agreed with limited visitation and both objected to increasing visitation to 15 hours a week, which was what Lisa sought. Counsel for Lisa argued that the visitation offered was not reasonable because the parents could at any point in time completely eliminate all visitation. The court responded that Lisa was requesting legal rights due a parent and emphasized that Lisa was not a legal parent.

At the hearing, the trial court denied Lisa's motion for visitation. The court explained: "This is not a situation where, as the court said before, [Lisa] has a right or stands on the footing as a parent. She is being provided access to the child. She may consider it limited access, but that's the prerogative of the

---

[3] The facts are from the declarations and memoranda filed in support of and in opposition to the motion for visitation and from the hearings on September 16, 2008, and July 7, 2011.

parents. And she may not like that, but we're not in a situation where the parents have completely cut her out of the child's life. [¶] And in fact, they, as parents, have the responsibility and the duty to make decisions that they determine, jointly, are in this child's best interest. They have done so and this court is not going to interfere with that. The court respects that. And in fact, applauds the fact that parents can make those decisions without the necessity of the court imposing its view in a situation where the court doesn't know the child."

The court elaborated: "And what [Lisa] wants the court to do is simply step over all of these regulations where the parents are working in unison and making determinations and have a custody evaluation, which is completely unwarranted, and allow her more access to the child when both parents are disagreeing. And she's not established that there is a detriment. And that's what she needs to do in this situation, as the court reads the law. [¶] And she talks about best interest, but the parents have made that determination. And so, she's in the position of having to show why the schedule that has been set up, and the court will note for the record, it's measured, it's thoughtful towards your client. She may not agree with it, but she hasn't established that the schedule, as it's presented, works a detriment to the child. The child does have access to her."

The court filed its order on October 23, 2008, denying Lisa's petition. The court found that Lisa is a stepparent to Eliana, not a legal parent, and that the court did not have jurisdiction to award custody or custodial rights to a stepparent. With regard to visitation, the court ruled: "[Section] 3101 does not provide [Lisa] with an absolute right to Family Court Services Mediation, or visitation with Eliana . . . . The court finds that Eliana's parents have provided access to Eliana and although it is limited. it is the parents' prerogative to limit the access. The court finds that it is the responsibility and duty of the parents to make decisions about their child. The court finds that the parents have jointly determined what is in Eliana's best interests. [Lisa] seeks to override the parents' decisions. This court respects the decisions of the parents and will uphold them. There is no legal basis to question the parents' determination as to what is in their child's best interests when they are working in unison. [Lisa] failed to meet her burden of proof under the law."

Lisa did not file a motion for clarification or reconsideration of this 2008 order. She also did not appeal from the 2008 order.

On September 12, 2009, Tiela and Michael wrote Lisa a letter stating that they had decided to reduce the time Eliana was spending with Lisa. They wrote: "[F]or about [two] years or more now we have adhered to a schedule

under which you see Eliana every Tuesday from the end of school (2:30 p.m.) until 7:15, and then on the third Saturday of each month from noon until [9:00 a.m.] the following morning." They asserted that Eliana came home from these visits angry and confused because Lisa told Eliana that her parents were lying to her about the schedule. They added: "We took Eliana to see Dr. Litter, the child psychologist that she saw last year. He expressed significant concern about her well-being. We invited you to meet with Dr. Litter separately, but you refused. We have worked with him on a plan to address Eliana's distress. You still have the opportunity to meet with Dr. Litter, if you choose." They concluded that Lisa could no longer see Eliana on Tuesdays or on the third Saturday but could have supervised visits periodically.

On May 9, 2011, Lisa filed a motion for "stepparent visitation," and requested a modification of the order on October 23, 2008, which denied her visitation. She asserted that she had been limited to supervised visitation of four hours every three months and thus she had only 16 hours a year with Eliana. She maintained that when Eliana visited her in 2007, Eliana would often tell her that she did not want to leave and had "meltdowns over insignificant occurrences." Lisa declared that Eliana would ask her very specific questions about her schedule, such as why Lisa did not see her as much as Tiela saw her. In June 2009, Lisa mentioned to Tiela that she had some "worrisome conversations" with Eliana and that Eliana wanted to spend more time with Lisa. In response, Tiela took Eliana to see Dr. Litter and suggested that Lisa meet separately with Dr. Litter. Lisa refused to meet with Dr. Litter because, according to Lisa's declaration, Tiela had referred to his alleged recommendations when opposing Lisa's motion for visitation in 2008. Lisa denied ever putting Eliana in the middle of Lisa's own issues with Tiela and Michael. She asserted that Eliana was upset about their short and infrequent visits and had repeatedly expressed a desire to see Lisa more frequently. Lisa maintained that her current visitation schedule was detrimental to Eliana "and a drastic change" from her previous schedule. Lisa urged the court to examine Eliana or have an evaluation of her to assess Eliana's preferences and best interests.

In opposing Lisa's motion, Tiela submitted her own declaration and the declaration of Michael. Tiela stated that in 2009 Eliana was having a difficult time and "[t]hings were particularly challenging before and after any extended time she was in Lisa's care." She maintained that Michael and she decided on the quarterly monitored visits with Lisa after consulting with Dr. Litter. The parents observed that once they reduced Eliana's visitation with Lisa, "Eliana's mood lifted" and her stress and anxiety were gone. Michael stated that Tiela and he knew what was in their daughter's best interests and they both agreed Eliana had been "doing significantly better" since they had restricted her visits with Lisa.

The trial court held a hearing on Lisa's motion on July 7, 2011. The court stated that it did not believe the parties had to be sworn because the issue before it was a strictly legal issue. Lisa's attorney argued that the present circumstances differed from the situation in September 2008, when the court denied her motion for visitation, because the parents were permitting reasonable visitation in 2008 and now Lisa had "effectively been cut out of the child's life." Counsel for Tiela countered that the court considered this issue in 2008 and concluded that the "parents had the prerogative, the right and the responsibility to make decisions about what is best for their child." Counsel noted that the court had mentioned that the parents were permitting Lisa to have contact with Eliana but that statement was not included in the order and was not binding authority. Lisa, counsel pointed out, still had some access to Eliana.

At the end of the hearing, the trial court denied Lisa's motion and rejected her request to examine Eliana. The court explained that it did "not believe that at age 10 it is appropriate or in the child's best interest to have a limited scope evaluation." The court requested counsel for Tiela to prepare an order.

After counsel for Tiela prepared the order, Lisa's attorney requested numerous changes and the two attorneys disagreed about a number of issues. After receiving orders from both parties' counsel, the court signed the final order provided by Tiela's attorney. The order filed on September 27, 2011, had a line drawn through the following: "Jurisdiction. This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with section 3400)." The order stated that the court found the following: "1) The applicable law requires that this court must give fundamental deference to the wishes of the biological parents. Their wishes in this case are quite clear and quite specific. The law places a significant burden on the stepparent to demonstrate that her requested relief is in the best interests of the child and that a denial of the requested relief would be detrimental to the child. The moving party has not met her burden. [¶] 2) The court does not give a great deal of weight to the hearsay statements of the minor child as presented by [Lisa]. [¶] The court does not find that a limited scope evaluation is appropriate, or in the minor child's best interests."

Lisa filed a timely notice of appeal. Tiela, an attorney, appears in propria persona in this court. On October 30, 2012, we issued an order requesting supplemental briefing by the parties to address the following: "Is there statutory or other legal authority for a stepparent to seek and obtain a court order modifying a visitation order where, as here, the original visitation order denied the stepparent's request for visitation under Family Code section 3101, subdivision (a)? In other words, can an order denying a stepparent visitation

rights be modified?" Both parties filed supplemental briefs on November 14, 2012, addressing this issue.

## DISCUSSION

### I. *Standard of Review*

" 'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289].) Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610 [18 Cal.Rptr.3d 685].) "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro*, at p. 255.)

A " 'showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . .' [Citation.]" (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449 [77 Cal.Rptr.2d 463].)

In reviewing any order or judgment we start with the presumption that the judgment or order is correct, and if the record is silent we indulge all reasonable inferences in support of the judgment or order. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 [66 Cal.Rptr.3d 1].) Nonetheless, " 'all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' [Citations.] Therefore, a discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] . . . The appellant bears the burden of showing a trial court abused its discretion." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15–16 [123 Cal.Rptr.3d 120].)

Lisa acknowledges that the standard of review of visitation orders is generally an abuse of discretion (see, e.g., *In re Marriage of Burgess* (1996) 13

Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473]), but argues that the question before us is a pure question of law and thus the standard of review is de novo. She also contends that we should apply the standard of review for a summary judgment motion and claims that Tiela's opposition to her request to modify the visitation order was "functionally a request for summary judgment, as she sought a per se dismissal of Lisa's request for stepparent visitation." Finally, she concludes that, alternatively, we should apply the substantial evidence standard of review. Thus, she argues that every standard of review except the abuse of discretion standard should be applied.

It is well settled that we review rulings on motions to modify child visitation orders for an abuse of discretion. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 255.) To the extent Lisa challenges the trial court's factual findings, our review is limited to whether any substantial evidence, contradicted or uncontradicted, supports the trial court's ruling. We resolve conflicts in evidence in favor of the prevailing party and draw all reasonable inferences to uphold the trial court's decision. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) We review questions regarding interpretation of the Family Code de novo (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1536 [22 Cal.Rptr.3d 447]) and, as already noted, an erroneous application of the law is an abuse of discretion if the ruling cannot be upheld on any legal basis.

## II. *The Law on Stepparent Requests for Visitation*

Since many of Lisa's attacks are premised on her claim that the trial court did not follow the law, we will briefly discuss the law on visitation requests by stepparents.

Section 3101, subdivision (a) states, "Notwithstanding any other provision of law, the court may grant reasonable visitation to a stepparent, if visitation by the stepparent is determined to be in the best interest of the minor child." Subdivision (c) of section 3101 provides that "[v]isitation rights may not be ordered under this section that would conflict with a right of custody or visitation of a birth parent who is not a party to the proceeding." Subdivision (d) of section 3101 defines a " '[s]tepparent' " as "a person who is a party to the marriage that is the subject of the proceeding, with respect to a minor child of the other party to the marriage."

■ The preference for the rights of the parents over those of nonparents in California has been established in custody cases. Visitation is "a limited form of custody during the time the visitation rights are being exercised" and "judicially compelled visitation against the wishes of both parents can significantly affect parental authority and the strength of the family unit."

(*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1517 [280 Cal.Rptr. 862].) In *Gayden,* we considered the trial court's award of visitation to the father's former girlfriend under Civil Code former section 4601, the predecessor to Family Code section 3101. We reversed and determined that the girlfriend had not rebutted the presumption that the wishes of the parents should be followed. (*In re Marriage of Gayden,* at p. 1521.) The record contained evidence that there was an atmosphere of bitterness and resentment and that visitation was not in the child's best interest. (*Ibid.*) Thus, we concluded that the record was "manifestly inadequate to overcome the presumption of parental autonomy" and therefore the appellate court could decide that visitation should not be awarded. (*Ibid.*) ■ We noted that in some circumstances the "needs of the child, which are the most important consideration, may sometimes require that a visitation award be made" to a person who has lived "with the child for a substantial portion of the child's life[,] . . . been regularly involved in providing day-to-day care, . . . and . . . been permitted by a biologic[al] parent to assume a parental role." (*Id.* at p. 1522.)

■ Subsequently, the United States Supreme Court in *Troxel v. Granville* (2000) 530 U.S. 57 [147 L.Ed.2d 49, 120 S.Ct. 2054] (*Troxel*) held that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel,* at p. 66.) The court stressed that " 'the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " (*Id.* at pp. 65–66.) A court may not disregard and overturn the decisions of fit custodial parents whenever a third party affected by the decision files a visitation petition. (*Id.* at pp. 67–68.) The court in *Troxel* concluded that a Washington statute that authorized nonparental visitation with a child was unconstitutional as applied to the circumstances before it and based its decision on a "combination of several factors," which included the absence of any allegation or finding that the parent was unfit, the trial court's failure to give any special weight to the parent's determination concerning the children's best interests, and the absence of any allegation that the parent had sought to eliminate visitation altogether. (*Troxel,* at pp. 68–72.)

Following *Troxel,* the California appellate court in *In re Marriage of W.* (2003) 114 Cal.App.4th 68 [7 Cal.Rptr.3d 461] held that the trial court applied section 3101 in an unconstitutional manner and had violated the parent's substantive due process right to the care, custody, and control of his child when the trial court ignored the presumption that "a parent's decision regarding visitation is in the best interest of the child." (*Marriage of W.,* at p. 71; see *Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1109 [105 Cal.Rptr.2d 139] ["a presumption exists that fit parents act in the best interests of their children"], disapproved on other grounds in *Conservatorship of Whitley*

(2010) 50 Cal.4th 1206, 1226, fn. 4 [117 Cal.Rptr.3d 342, 241 P.3d 840].) The court reasoned: "Requiring a presumption in favor of parental decisions also furthers the 'long-standing inclination of California courts to defer to the jointly expressed wishes of the parents except in the most unusual and extreme cases.' " (*Marriage of W.* at p. 74.) The court stated: "As long as a 'parent adequately cares for his or her children (i.e., is fit), there will *normally* be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.' " (*Id.* at p. 73, italics added.) The court concluded: "[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (*Troxel, supra,* 530 U.S. at p. 70.)

 Appellate courts have recognized that in appropriate circumstances a court may impose a visitation order against a custodial parent's wishes, and that such orders are not per se invalid. (*Hoag v. Diedjomahor* (2011) 200 Cal.App.4th 1008, 1010 [132 Cal.Rptr.3d 256] (*Hoag*) [appellate court affirmed trial court's finding that grandmother was entitled to visitation because the presumption that the father was acting in the child's best interest was overcome by the evidence that his reasons for objecting to visitation were not reasonable and were mainly to spite the grandparent]; *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1478–1479, 1485 [1 Cal.Rptr.3d 185] (*Fenn*) [appellate court concluded that trial court erred in granting father's motion for summary judgment against the grandmother's petition for visitation because ruling was on the sole basis of father's claim that he was a fit parent and the facts in support of the summary judgment did not establish that any court-ordered visitation would necessarily be an unconstitutional infringement on the due process right of the father and his new wife].) A custodial parent's decisions regarding visitation are entitled to presumptive validity and must be accorded " 'special weight,' " but they are not immune from judicial review. (*Fenn*, at p. 1479.)

 The court in *Rich v. Thatcher* (2011) 200 Cal.App.4th 1176 [132 Cal.Rptr.3d 897] held that the nonparent must overcome the presumption that a fit parent will act in the best interest of the child by "clear and convincing evidence." (*Id.* at pp. 1178, 1180 [applying this burden of proof to a grandmother seeking visitation under § 3102].) This standard is necessary, the court reasoned, to protect the parent's constitutional right to raise a child, and "a 'mere preponderance' burden as to 'best interest' is not sufficient. The 'clear and convincing' burden, i.e., evidence ' " ' "so clear as to leave no substantial doubt," ' " ' promotes a parent's constitutionally protected 'first' choice." (*Rich*, at p. 1180.)

### III. *The Trial Court Correctly Denied the Request to Modify the Visitation Order*

#### A. *Lisa Is Barred from Attacking the 2008 Order*

The *sole* issue before the trial court was the merits of Lisa's argument that the 2008 order should be modified. The parties have not cited—and our independent research has not uncovered—any California court that has considered a stepparent's appeal from an order denying the request to modify a visitation order.[4]

Lisa's argument is that the trial court erred when it denied her visitation under section 3101 because it presumed that the parents' wishes were dispositive. She cites authority that states that a court may order visitation to a grandparent even when the parents object to visitation (see, e.g., *Fenn, supra,* 109 Cal.App.4th 1466), and the cases that state that the presumption in favor of the parents' decisions regarding visitation is given great weight but may "in the most unusual and extreme cases" be rebutted. (See, e.g., *In re Marriage of Gayden, supra,* 229 Cal.App.3d at p. 1520.) She claims that the trial court in the present case incorrectly applied the law because it concluded that the agreement of Michael and Tiela to limit her visitation with Eliana was the only evidence it had to consider.

Lisa's arguments ignore much of the record as well as the posture of this case. Although she characterizes her appeal as being from the 2011 order, her challenges are thinly veiled attacks on the final 2008 order. Her papers in the lower court evince this attempt to treat her motion to modify as an original petition for visitation. On May 9, 2011, she filed in the superior court her notice of motion for an application to modify the 2008 order. On the form, she marked an "X" in the box next to the heading at paragraph 2, which states, "CHILD VISITATION." In this same paragraph, under Child Visitation, she put an "X" in the box next to the heading "Modify existing order." She indicated that she was seeking to modify the order filed on October 23, 2008, and specified that this order "denied" visitation. However, the caption on her memorandum of points and authorities filed in 2011 does not state that this is a motion to modify the 2008 order but purports to be a "motion for stepparent visitation."

---

[4] Indeed, we are aware of only one published case that involves a stepparent and visitation under section 3101 (or Civ. Code, former § 4601). The appellate court in *In re Marriage of W., supra,* 114 Cal.App.4th 68 held that the trial court's application of section 3101 violated the parents' constitutional rights because the court failed to apply the "presumption favoring the joint decision by [the parents] that visiting [the stepfather] was not in the best interest of their child." (*In re Marriage of W.,* at p. 75.) The appellate court remanded for the trial court to consider the evidence and apply the correct constitutional standard. (*Id.* at pp. 74–75.)

■ Lisa cannot now mount a challenge to the ruling in the 2008 order, which she never appealed. Visitation orders are appealable orders under Code of Civil Procedure section 904.1, subdivision (a)(10). "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 436 [210 Cal.Rptr. 567].) " 'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.' " (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].) We will thus not consider Lisa's belated attacks on the issues decided in the 2008 order.

B. *Changed Circumstances Does Not Apply*

Until we requested supplemental briefing, Lisa did not address what legal authority permitted her to request a modification of a visitation order denying her visitation under section 3101. In the trial court, she argued that the limitation on visitation constituted a changed circumstance. In her papers in the trial court, she did not cite any authority suggesting that an order denying visitation may be modified upon a showing of a change of circumstances.

In her reply brief and supplemental brief in this court, Lisa acknowledges that the changed circumstances rule does not apply. (See, e.g., *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379–1382 [18 Cal.Rptr.3d 306].) We agree that the changed circumstances rule does not apply in this case.

■ A parent "seeking to alter the order for legal and physical custody can do so only on a showing that there has been a substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37.) Under the changed circumstances rule, " 'once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' " (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256.) "The changed circumstances test requires a threshold showing of detriment before a court may modify an existing final custody order that was previously based upon the child's best interest. The rule is based upon principles of res judicata. [Citation.] In these cases, 'a child should not be removed from prior custody of one parent and given to the other " 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' " ' " (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996 [20 Cal.Rptr.3d 522].)

Here, there was never any custody dispute. Both Tiela and Michael had entered into a contract to share physical custody of Eliana. Lisa, as the stepparent, had no legal right to custody; she does not have a constitutionally protected interest in the care, custody, and control of the child. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219–220 [17 Cal.Rptr.3d 842, 96 P.3d 141].)

█ When a legal parent seeks to modify a visitation schedule set forth in a final custody order, the changed circumstance rule does not apply. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077 [74 Cal.Rptr.3d 803]; *Enrique M. v. Angelina V., supra*, 121 Cal.App.4th at pp. 1379–1382.) The court has residual and broad discretion to modify visitation orders for legal parents to " 'obviate time-consuming custody litigation . . . .' " (*Lucio*, at p. 1078.) The fact that courts have discretion to modify parental visitation orders without considering a change of circumstances does not mean that courts should not require a stepparent to show changed circumstances and evidence that the change in visitation is in the child's best interests before modifying a stepparent's visitation order. As already stressed, legal parents have superior rights to the care and control of their children and therefore the court has different considerations when modifying a visitation order for a parent than it does when modifying visitation for a stepparent. We, however, need not decide the standard for modifying a stepparent's visitation order because, as already discussed, the trial court did not order visitation in the present case; thus, there is no ordered visitation to modify.

█ Although Lisa states in her appellate briefs that a change of circumstances does not apply to her motion to modify visitation, she proceeds to argue that the evidence supported a finding of changed circumstances. Lisa's argument is that the court's 2008 order was based on the reasonableness of the visitation offered to her at that time and the restrictions the parents now placed on her visits with Eliana constitute an unreasonable modification or change of circumstance. To the extent that Lisa is suggesting that the limitation placed on her access to Eliana is automatically unreasonable because she now has essentially no access to Eliana, her argument lacks merit. Courts have held in situations where the grandparents were seeking a visitation right that the mere opposition to grandparent visitation does not render an otherwise fit parent an unfit parent. (*Zasueta v. Zasueta* (2002) 102 Cal.App.4th 1242, 1254–1255 [126 Cal.Rptr.2d 245].)

To support her argument that the 2008 order was conditioned on the parents' continuing to permit Lisa to visit with Eliana for a few hours each Tuesday and an overnight on the weekend once a month, Lisa relies on statements made at the hearing. Rather than refer to the actual 2008 order, she extracts statements made by the court during the hearing on her motion requesting visitation and claims that the court's order was predicated upon her being able to visit Eliana for a particular amount of time.

At the hearing, the court commented that it believed that Lisa wanted 15 hours a week with Eliana and an "unfettered" right "to say when she wants to see the child." When counsel for Lisa complained that the parents could completely cut off any visitation at their whim, the court responded: "Why isn't that their right? They're the parents." The court then elaborated that the parents had not taken that position, and that the situation might be different if the parents, abruptly, terminated visits, but that was not the situation before it; the court expressed no opinion as to that situation. Subsequently, the court commented that it would "note for the record" the parents' joint decision regarding visitation with Lisa was "measured" and "thoughtful" towards Lisa. The court added that Lisa "may not agree with it, but she hasn't established that the schedule, as it's presented, works a detriment to the child. The child does have access to her."

The statements by the trial court cited by Lisa do not indicate that the court's ruling was based on the parents' continuing to provide Lisa the same amount of access to Eliana in the future. Indeed, if that were the case, she could have brought a motion or an order to show cause based upon the parents' noncompliance or violation of the visitation schedule. Such a motion would not have been successful because the court plainly did not set forth a specific visitation schedule.

The trial court's statements at the 2008 hearing reflect the court's observation that Lisa's request under section 3101, which was essentially a motion to substitute her judgment for the parents' agreement about the amount of time she should spend with Eliana, had no legal basis. The parents had permitted visitation and Lisa wanted more; she wanted the unbridled right to decide the number of hours she would spend with Eliana. The court correctly noted that there was no legal basis under section 3101 for this request.

The 2008 order expressly denied Lisa's request under section 3101 and found that Lisa had failed to show by clear and convincing evidence that the parents were unfit to make determinations in their child's best interests regarding visitation. The court order in 2008 did not state that its findings were limited or conditioned upon the parents' consenting to a particular number of hours of visitation. The court acknowledged that the parents had provided Lisa with access to Eliana but did not suggest that such access had to continue at the same level. To the contrary, the 2008 order provided that Lisa, a stepparent, did not have "an absolute right" to visitation with Eliana. The 2008 order stated that the parents had provided Lisa access to Eliana and, although that access was "limited," it was "the parents' prerogative to limit the access." The order specified: "The court finds that it is the responsibility and duty of the parents to make decisions about their child. The court finds that the parents have jointly determined what is in Eliana's best interests.

[Lisa] seeks to override the parents' decisions. This court respects the decisions of the parents and will uphold them. There is no legal basis to question the parents' determination as to what is in their child's best interests when they are working in unison. [Lisa] failed to meet her burden of proof under the law."

 The 2008 order thus found that Lisa did not have an absolute right to visitation with Eliana; the parents had the right to determine what was in Eliana's best interests; and Lisa had failed to meet her burden of rebutting the presumption that the parents were able to make the best interest decisions for Eliana.[5] As the court expressly stated in its 2008 order, "it is the parents' prerogative to limit the access." None of the trial court's statements at the hearing contradicts the plain language of the 2008 order and, in any event, "a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances." (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 [7 Cal.Rptr.3d 715].)

To the extent Lisa is now arguing that the order is unclear or that the court adjudicated issues not supported by the evidence in the record, such objections to the 2008 order are clearly untimely. (See, e.g., *Norman I. Krug Real Estate Investments, Inc. v. Praszker, supra*, 220 Cal.App.3d at p. 46.) As already noted, Lisa did not file a motion for clarification or reconsideration.

Accordingly, we conclude that the changed circumstances rule does not apply and, even if it did, the record does not support changed circumstances.

### C. No Case Law or Statute Authorizes a Request by a Stepparent to Modify the Denial of Visitation Under Section 3101

We are not aware of any California court that has considered whether a stepparent may request modification of a final order denying visitation under section 3101, subdivision (a). Since courts have not created a right to request modification of a final order under section 3101, we must examine the pertinent statutes to determine whether the Legislature provided the court with the discretion to consider a request to modify the denial of visitation to a stepparent.

---

[5] In her supplemental brief, Lisa claims that collateral estoppel does not apply because the issues decided in 2008 are not identical to the issues raised in her motion to modify. She asserts that one of the reasons for the court's denial of her request for visitation in 2008 was that the parents were permitting her to have regular contact with Eliana and, since the amount of visitation allowed changed, the factual issues in the 2008 and 2011 proceedings are not identical. As explained with regard to her argument on changed circumstances, the court in 2008 decided whether Lisa had rebutted the presumption that the parents' decision regarding visitation was in their child's best interest. This is the exact same issue that Lisa is attempting to relitigate.

■ When interpreting statutes, "[w]e begin as always 'with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.' [Citation.] To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. [Citations.] 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

■ We do not consider the words in the statute in isolation; rather, we construe the words of the statute " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) "We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*People v. Mendoza* (2000) 23 Cal.4th 896, 908 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

■ Section 3101 *permits* a court to *grant reasonable* visitation rights to a stepparent, if such rights are in the best interests of the child.[6] Section 3101 does not include any language that permits a stepparent to request a modification of a denial of visitation.

Lisa concedes that the statute does not provide for modification but argues that the statute does not preclude a stepparent from again seeking court-ordered visitation. Since it does not bar such a request, Lisa concludes that the Legislature intended to permit multiple requests to modify visitation orders under section 3101.

An examination of the Family Code, however, establishes that the Legislature specifically provides for modification of visitation or custody orders in other statutes. Section 3047 provides for the "modification of the existing custody order" when the party with sole or joint physical custody or visitation receives temporary duty, deployment, or mobilization orders from the military. (*Id.*, subd. (b)(1).) Similarly, a joint custody order "may be modified or

---

[6] Section 3101 provides: "(a) Notwithstanding any other provision of law, the court may grant reasonable visitation to a stepparent, if visitation by the stepparent is determined to be in the best interest of the minor child. [¶] (b) If a protective order . . . has been directed to a stepparent to whom visitation may be granted pursuant to this section, the court shall consider whether the best interest of the child requires that any visitation by the stepparent be denied. [¶] (c) Visitation rights may not be ordered under this section that would conflict with a right of custody or visitation of a birth parent who is not a party to the proceeding. [¶] (d) As used in this section: [¶] (1) 'Birth parent' means 'birth parent' as defined in Section 8512. [¶] (2) 'Stepparent' means a person who is a party to the marriage that is the subject of the proceeding, with respect to a minor child of the other party to the marriage."

terminated upon the petition of one or both parents . . . if it is shown that the best interest of the child requires modification or termination of the order." (§ 3087.) The Legislature specifically provided that a joint custody order may be modified at any time. (§ 3088.) Under section 3179, "[a] custody or visitation agreement reached as a result of mediation may be modified at any time at the discretion of the court . . . ." Similarly, spousal and child support orders may be modified under sections 3603, 3591, 3651, and 4326. (See § 3422, subd. (b) ["A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction . . . may modify that determination only if it has jurisdiction to make an initial determination . . . ."].) We presume that the Legislature, when omitting any language providing for modification of the denial of visitation under section 3101, was aware that other statutes on visitation and custody specifically granted the courts with discretion to modify these orders and therefore did not intend for a stepparent to be able to request a modification of the denial of visitation under section 3101. (See *People v. Low* (2010) 49 Cal.4th 372, 386, fn. 8 [110 Cal.Rptr.3d 640, 232 P.3d 635]; see also *People v. Licas* (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507] [" ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." ' "].)

Furthermore, an examination of statutes outside the Family Code context supports the conclusion that the Legislature makes it clear when it intends to permit a party to request a modification of a visitation or custody order and what evidence must be submitted to support such a modification. For example, in proceedings that involve the termination of guardianships in juvenile dependency cases, a court may issue an order for ongoing visitation between the child and the former guardian and the statute provides that an order granting or denying visitation "may not be modified unless the court determines, based upon evidence presented, that there has been a significant change of circumstances since the court issued the order and that modification of the order is in the best interest of the child." (Prob. Code, § 1602, subd. (b).)

These statutes make it clear that the Legislature explicitly provides for the modification of a custody or visitation order when it intends to provide the court with discretion to grant this relief. When interpreting statutory language, the court may neither insert language that has been omitted nor ignore language that has been inserted. (*People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919–920 [66 Cal.Rptr.2d 29].) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

Lisa contends that interpreting section 3101 within the framework of the Family Code supports a conclusion that the stepparent can repeatedly file a motion to modify the denial of visitation under section 3101.[7] She notes that the Legislature is concerned with the best interests of the child and maintains that permitting the stepparent to challenge—apparently without limit—a finding that the parents' decision regarding visitation with a stepparent was in the child's best interests comports with this objective. She asserts that the child's best interests may change over time, and thus the stepparent should be able to request court intervention whenever these "best interests" change. She also cites to section 297.5, which pertains to domestic partnerships, and stresses that this statute expressly provides domestic partners with the same rights as spouses.

■ Lisa's arguments are not persuasive. Lisa's reliance on the Family Code sections related to domestic partnerships is completely unavailing. As a former domestic partner, who was never a legal parent to Eliana, Lisa has the exact same legal rights as a former spouse, who never was a legal parent to the former spouse's child. Stepparents—whether they are former domestic partners or former spouses—have no legal right to custody and the court has discretion to grant visitation under section 3101 against the parents' wishes only in the most " 'unusual and extreme cases.' " (*In re Marriage of W., supra,* 114 Cal.App.4th at p. 74.)

Furthermore, it is not in a child's best interest to have the parents brought into court repeatedly—until the child reaches the age of majority—whenever the stepparent disagrees with the visitation decision made by the parent. "Providing parents a superior ability to influence the upbringing of their child is clearly in the interests of the child. By diminishing the likelihood of struggle between parents and others close to the child with whom the parents are at cross-purposes, the parental preference minimizes the likelihood the child will be exposed to hostility between those with whom he or she has a strong attachment, which can cause distress, create loyalty dilemmas and be

---

[7] Lisa argues that this court's request for supplemental briefs regarding the construction of section 3101 shows that the statute is ambiguous and can be interpreted in more than one way. Lisa incorrectly construes the reason for this court's request for supplemental briefing. As we have already discussed, Lisa failed to cite any legal authority in support of her right to file a motion to modify the denial of her request for visitation under section 3101. The trial court rejected her motion to modify on its merits and did not consider whether the statute authorized the court to entertain such a motion. We thus requested supplemental briefing to afford the parties an opportunity to present their views on the construction of the statute. (See Gov. Code, § 68081.) The request for supplemental briefing on an issue not raised in either the trial court or in the briefs in the appellate court does not suggest or imply that Family Code section 3101 is ambiguous.

disruptive of the child's socialization experiences. [Citation.] Recent empirical studies suggest that in many instances sustained exposure to ongoing conflict may cause children more psychological distress and adjustment difficulties than separation from an attachment figure involved in the conflict. [Citation.] Deference to parental autonomy not only minimizes conflict with others outside the immediate family, but encourages the development of a stronger and more reliable relationship between parent and child. 'A child develops best if he can have complete trust that the adults who are responsible for him are the arbiters of his care and control as he moves toward the full independence of adulthood and gradually comes to rely upon himself as his own caretaker.' [Citation.]" (*In re Marriage of Gayden, supra,* 229 Cal.App.3d at p. 1517, fn. omitted.)

The result of permitting a stepparent to haul a parent into court over and over again because the stepparent wants more access to the child, as Lisa advocates, is clearly contrary to "a presumption in favor of parental decisions" and "the 'long-standing inclination of California courts to defer to the jointly expressed wishes of the parents . . . .' " (*In re Marriage of W., supra,* 114 Cal.App.4th at p. 74.) "As long as a 'parent adequately cares for his or her children (i.e., is fit), there will *normally* be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.' " (*Id.* at p. 73, italics added.)

Once the court denies, as the court did here, visitation to a stepparent under section 3101, subdivision (a), the court has determined that there is absolutely no reason for the court to substitute its judgment—or the judgment of the stepparent—for the unified decision of the parents. Here, the court did not set forth a specific visitation schedule that *must* be followed; thus, there is no visitation schedule to be modified. Furthermore, no statute or case law provides the court with the authority to modify this final order. Here, the request for modification is simply an attempt to challenge the 2008 order.

We hold that the trial court did not abuse its discretion in denying Lisa's motion to modify the 2008 order, as Lisa cannot, as a matter of law, seek to modify an order denying her visitation under section 3101, subdivision (a). Thus, the trial court should have dismissed Lisa's motion as a matter of law without considering whether Lisa had met her burden of proof in overcoming the presumption that the parents are the most fit to decide what is in the child's best interests.[8] We nevertheless affirm the trial court's ruling, as Lisa's

[8] Lisa's principal complaint in her appeal is that the trial court mistakenly believed that the parents' agreement about visitation was dispositive and the court failed to consider her evidence. She supports this assertion by citing the court's statement at the hearing that this was "strictly a legal issue" and that it did not need to have the parties testify. Tiela responds that the

motion to modify the 2008 order was properly rejected. (See *Montenegro v. Diaz, supra,* 26 Cal.4th at p. 255 [appellate court will uphold trial court's ruling " 'if it is correct on any basis, regardless of whether such basis was actually invoked' "].)

## IV. *The Court's Refusal to Hold an Evidentiary Hearing*

Much of Lisa's argument in her appellate briefs is devoted to assailing the trial court's denial of her request to require the testimony of Eliana under section 3042. She maintains that the court should have considered Eliana's preferences and wishes regarding visitation. She also claims that the court was obligated to consider all of the potential evidence and that section 217 required an evidentiary hearing.

As already discussed, there was no legal basis for Lisa's motion and therefore she cannot allege any error based on the trial court's refusal to hear testimony from Eliana, who was 10 years old at that time. Although it is not necessary for us to go any further, we also reject Lisa's arguments on the merits.

■■■ Lisa contends that the trial court "must consider the totality of the circumstances when adjudicating a nonparent's request for visitation over the objections of biological parents" and she cites *Fenn, supra,* 109 Cal.App.4th 1466 and *Hoag, supra,* 200 Cal.App.4th 1008. Neither of these cases supports her position as both cases concern a request for visitation and not a request to modify a visitation order. "[O]nce a *judgment* has been entered . . . , a postjudgment *motion*" requires an evidentiary hearing "only if *necessary* . . . ." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1360 [63 Cal.Rptr.3d 483, 163 P.3d 160]; see *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 962 [38 Cal.Rptr.3d 610, 127 P.3d 28].)

Lisa also argues that the court had to hold an evidentiary hearing under section 217 and claims that courts' holdings that evidentiary rulings do not apply to postjudgment motions were decided prior to the enactment of section 217. Section 217 provides: "(a) At a hearing on any order to show cause or

court did consider the evidence before it as the 2011 order denying Lisa's request to modify the 2008 order specified that the court had "read and considered the pleadings, the law, and the arguments of counsel." We need not determine what the court meant by its statement that the issue was strictly legal because, as discussed, this was a correct statement; there was no need for the court to consider the evidence.

notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties. [¶] (b) In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing. . . . [¶] (c) A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing."

Lisa has not cited to anyplace in the record where she filed a motion pursuant to section 217. Additionally, she has not demonstrated that she complied with any of the requirements of section 217. Finally, this statute permits the court to reject a request for live testimony for good cause. (§ 217, subd. (b).) Here, the trial court expressly stated the following: "I also do not believe that at age 10 it is appropriate or in the child's best interest to have a limited scope evaluation." The court repeated this finding in its order, and we agree with the trial court's conclusion that it would not have been in Eliana's best interest to be brought into the court and forced to testify in a visitation dispute between her parents and Lisa.

Finally, in the lower court, Lisa argued that Eliana, at the age of 10, was sufficiently mature for the court to consider her preferences and wishes regarding visitation and that the court should have determined her preferences pursuant to section 3042. Section 3042, subdivision (a) provides: "(a) If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation, the court shall consider, and give due weight to, the wishes of the child in making an order granting or modifying custody or visitation." Subdivision (g) of section 3042 reads: "Nothing in this section shall be construed to require the child to express to the court his or her preference or to provide other input regarding custody or visitation."

Section 3042, subdivision (a), originally applied only to custody determinations and did not apply to visitation. The statute was amended to add visitation and subdivision (i) of section 3042 specifies that this change "shall become operative on January 1, 2012." The hearing on visitation in the present case occurred on July 7, 2011; therefore, section 3042, subdivision (a), did not apply.

██ Furthermore, the current statute simply requires the court to give "due weight" to the child's preferences and may permit a child less than 14 years of age to address the court "if the court determines that is appropriate pursuant to the child's best interests." (§ 3042, subds. (a), (d).) Here, Lisa provided Eliana's alleged desires in her declaration, which the court read and considered. The court stated that it did "not give a great deal of weight" to the statements of a 10-year-old child. As already noted, the trial court found that it was not in Eliana's best interests to testify in court.

Accordingly, we reject Lisa's contentions of error based on the trial court's refusal of her request to have a then 10-year-old child testify or be examined regarding her wishes to visit with her stepparent.

## V. *No Abuse of Discretion in Terminating Jurisdiction over Custody*

Lisa contends that the trial court abused its discretion by striking out the continuing jurisdiction language on the Judicial Council Form. The following language at paragraph 12 on the form had a line drawn through it: "Jurisdiction. This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with section 3400.)" Lisa argues that visitation is a form of custody and therefore the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) applies. She insists that she should be able to file another motion for visitation, if circumstances change.

After the hearing on Lisa's motion to modify the 2008 order, counsel for Lisa and Tiela exchanged proposed orders, and on September 19, 2011, Lisa's counsel provided the court with her proposed order and Tiela's proposed order. In Lisa's proposed order, she agreed that paragraph 12 should be omitted but she added a footnote indicating that the court had jurisdiction over any visitation rights Lisa might have. Tiela contends that she opposed the insertion of the paragraph proposed by Lisa because this would confer on Lisa a court-ordered right to stepparent visitation, which she was never awarded.

Custody in the present matter was never an issue but Lisa would like to be able to ask the court to intervene each time the parents make any decision regarding visitation until Eliana is an adult. Lisa's visitation rights are also no longer an issue as the court denied her claim for stepparent visitation under section 3101 in 2008. Accordingly, the trial court did not abuse its discretion in refusing to maintain continuing jurisdiction.

## DISPOSITION

The judgment is affirmed.

Haerle, J., and Richman, J., concurred.

On February 6, 2013, the opinion was modified to read as printed above.