Filed 3/12/15  In re Dominic C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DOMINIC C., a Person Coming Under the Juvenile Court Law. | D066877 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ013038) |
| v. | |
| JASON C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Ryan M. McGlinn for Respondent Katy E.

The sole issue in this case is whether the juvenile court abused its discretion at the jurisdiction hearing by ordering the father's visitation with his son be supervised. We find no abuse of discretion and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Katy E. is Dominic C.'s mother, and Jason C. is his presumed father.[1] In July 2013, the San Diego County Health and Human Services Agency (the Agency) became involved with the family after Jason slammed Katy's head against a tile floor and threatened to kill her. Jason was convicted of felony domestic violence, and Katy has a restraining order against him as a condition of his probation.

This case involves two nonaccidental ear injuries to Dominic. On June 4, 2014, the San Diego County Health and Human Services Agency (the Agency) filed a petition on behalf of Dominic, then a few weeks shy of his second birthday, addressing the first injury. The petition cited Welfare and Institutions Code section 300, subdivision (a), and alleged that on May 27, 2014, Dominic sustained a "bruising to both sides of his left ear," and the "condition would not ordinarily be sustained except as a result of the unreasonable acts of the child's father." At the detention hearing, Dominic was detained with Katy, and Jason was granted supervised visitation.

The morning of the incident, Katy had gone to work early and left Dominic at home with her boyfriend, Wes B., and her three older children. The maternal grandfather

---

[1] Katy does not appeal the jurisdictional order, and Jason does not challenge the court's exercise of dependency jurisdiction over Dominic as it pertains to Katy's conduct. He disputes the injuries "were caused by any unreasonable act on his part."

came to the home at between 8:00 and 8:30 a.m. and took Dominic to day care. The grandfather did not see any mark or bruise on Dominic's ear. When Dominic arrived at day care, the provider, Beverly S., conducted a routine visual inspection, including his face, neck, and head. She did not notice any mark or bruise on his ear.

That day, Jason picked up Dominic from day care at 4:05 p.m. At approximately 4:30 p.m., Beverly got a call from Jason asking about a bruise on Dominic's left ear. She denied that she saw any mark or bruise or that Dominic was injured while in her care. Beverly told a social worker that when Jason came to pick up Dominic, he acted fearful. He "would hide . . . behind her legs and run to the other room."

At about 5:00 p.m., Jason reported the bruise to Katy. Jason took Dominic to Katy's home at about 8:00 p.m., and she observed his ear "to be red and swollen . . . as if something recently happened." When Jason asked to hug and kiss Dominic before he left, the child "did not want to go to him and when in the father's arms, he was struggling to go back to his mother."

Jason told a social worker he first observed the bruise on Dominic's ear about 30 minutes after picking him up from day care. He denied harming Dominic and said he believed Wes was responsible. At the social worker's request, Katy had Wes leave the home during the investigation. In June 2014, the social worker permitted him to move back in. Wes denied any knowledge of how Dominic's ear was injured.

Dr. Premi Suresh, a child abuse expert at the Chadwick Center of Rady's Children's Hospital, reviewed photographs of the injury. She reported that the bruise "extends over the anti-helix and both sides of the helix of the left ear," and "[t]his type of

3

bruising is unusual for accidental injury and is highly concerning for inflicted injury." (Bolding and italics omitted.) Dr. Suresh reported it is possible for a bruise to occur within a half hour of an injury. She added that "[i]t depends on the person, everyone bruises differently," and "[t]his is why we don't/can't really date bruises." (Italics omitted.) According to the social worker, the bruise "looked like an adult finger. It was dark purple with a little bit of blue and red in it."

On August 21, 2014, Katy reported to the social worker that Dominic was injured when he fell at home the previous day. When the fall occurred, Katy was on duty in the military for two days and Dominic was in Wes's care. Initially, she was not forthcoming that the child was in Wes's care.

Dr. Suresh examined Dominic on August 22, and he "was found to have a non-accidental injury to his *right* ear, consistent [with] child abuse." (Italics added.) Katy did not see this bruise before Dr. Suresh pointed it out. Dominic was temporarily retained at Polinsky Children's Center. Wes again moved out of the home.

The Agency filed an amended petition, which contained two counts under section 300, subdivision (a). The first count contained the original allegation that Jason had harmed Dominic on May 27, 2014. The second count alleged that on or about May 27, 2014, and August 22, 2014, Dominic sustained bruising to both ears, the injuries are highly concerning for inflicted injury, and "[s]uch condition would not ordinarily be sustained except as a result of the unreasonable acts of the child's *parents*." (Italics added.)

4

At the commencement of the jurisdiction and disposition hearing, the court dismissed count 1 of the petition at the Agency's request. In addition to the evidence recounted above, the social worker, Stephanie Seward, testified that if Dominic were returned home, the risk to him "could be high," particularly since he was too young to "verbalize to us who actually inflicted either injury on him." Dr. Suresh told the social worker that the ear was not a normal place for a child to get a bruise, and Dominic was too young to "inflict the force that would be needed . . . to make those bruises on his ear." Seward was also concerned about Jason's domestic violence toward Katy.

The maternal grandmother testified that before the May 27, 2014, incident, she was present when Jason's visitation began. She explained that Dominic did not appear to want to go with Jason on a number of occasions. He would hide behind her legs and "be resistant to go to him." The maternal grandfather testified he transported Dominic to Jason's supervised visits, and Dominic appeared uncomfortable during the visits. Dominic was "very clingy" and "[j]ust did not seem like he wanted to go."

From the evidence, the court inferred Jason likely caused the first bruise to Dominic's ear, which was "the worst of the injuries." The court noted Dominic was afraid of Jason "during this one-week period of time." The court also explained Jason's "background doesn't help in that. He has the incident, the felony domestic violence." One of Katy's daughters reported he grabbed her and left marks on her arm, and another daughter "at the mention of his name starts crying hysterically to the social worker."

The court found by a preponderance of the evidence that the petition's section 300, subdivision (a)'s allegations were true, and it stated it "will conform to proof" under

5

subdivision (b) of section 300. The court ordered the parents to comply with their case plans, placed Dominic with Katy, and ordered supervised visitation for Jason. The court, however, gave the Agency the discretion to "elevate those to unsupervised visits or overnight visits with notice to minor['s] counsel."

## DISCUSSION

Jason contends substantial evidence does not "support the implied finding that [he] was the perpetrator of Dominic's May 27, 2014[,] ear injury," and the finding resulted in the supervised visitation order. He points out that Dr. Suresh did not testify it was "probable" or a "medical certainty" that a bruise would develop within 30 minutes of an injury. He also asserts the combined observations of the day care provider, Beverly, the maternal grandmother, and two of Katy's daughters that Dominic did not have a bruise when he went to day care that day, "does not rule out the *possibility* that Dominic was injured by Wes before the maternal grandfather picked him up to drive him to [day care]." Jason also asserts, "Given that Wes caused Dominic's second ear injury, it is certainly *possible* and likely probable that Wes injured Dominic's ear near in time to the maternal grandfather's arrival at Katy's home to transport Dominic to day care," and, "It is *possible* and likely probable that Beverly did not notice the bruise as it continued to darken over the course of the day." (Italics added.)

" 'The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section.' " "(§ 362, subd. (d).) Under section 362, subdivision (d), '[t]he juvenile court has broad discretion to determine what would best

6

serve and protect the child's interests and to fashion a dispositional order accordingly.' [Citation.]  On appeal, ' "this determination cannot be reversed absent a clear abuse of discretion." ' " (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220-1221.) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child.  [Citation.] 'Under this test, we must uphold the trial court "ruling if it is correct on any basis." ' " (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)

Jason essentially asks this court to substitute its judgment for that of the juvenile court.  "A ' "showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion.  An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.  To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice." ' " (*Chalmers v. Hirschkop*, *supra*, 213 Cal.App.4th at p. 299.)

" 'It is the [juvenile] court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence.  We have no power to judge the effect or value of the evidence.' " (*In re Maya L.* (2014) 232 Cal.App.4th 81, 104, fn. 6.)  We have reviewed the entire record, and are satisfied the juvenile court did not abuse its broad discretion to issue a visitation order in Dominic's best interests.  The evidence amply supports a finding Jason was the perpetrator of the May 27, 2014,

7

incident.  Moreover, the court gave the Agency the discretion to elevate Jason's visitation to unsupervised.

## DISPOSITION

The order is affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.

8