[No. G039072. Fourth Dist., Div. Three. Apr. 8, 2008.]

In re the Marriage of AMANDA and BERNARDO LUCIO.
AMANDA LUCIO, Respondent, v.
BERNARDO LUCIO, Appellant.

**COUNSEL**

Gilligan Law Corporation and John J. Gilligan for Appellant.

Law Offices of Jeffrey W. Doeringer and Jeffrey W. Doeringer for Respondent.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Under the changed circumstance rule, after the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, custody modification is appropriate only if the parent seeking modification demonstrates " 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 [38 Cal.Rptr.3d 610, 127 P.3d 28].) But the changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa. Instead, the trial court considers a request to change the parenting or visitation arrangement under the best interests of the child standard.

In this case, Bernardo Lucio (Bernardo) brought an order to show cause (OSC) requesting an alteration to the visitation arrangement set forth in the judgment of dissolution of his marriage to Amanda Lucio (Amanda).[1] The dissolution judgment granted Amanda sole physical custody of the children and permitted Bernardo monitored visits for six hours each Sunday. In a postjudgment order dated June 4, 2007 (the June 4 Order), the trial court dismissed the OSC, stating Bernardo failed to allege changed circumstances that would allow the court to consider his request to alter the visitation arrangement. The court erred because Bernardo did not request a change in custody and therefore was not required to demonstrate changed circumstances. We cannot tell how the trial court would have exercised its discretion had it considered Bernardo's request under the best interests of the child standard, and therefore reverse the June 4 Order and remand for further consideration.

In a postjudgment order entered on July 11, 2007 (the July 11 Order), the trial court awarded Amanda attorney fees. The July 11 Order did not identify the statutory basis for the award, and the parties dispute whether the award was a sanction under Family Code section 271 or was based on need and ability to pay under Family Code section 2030. Based on the record before us, we conclude the trial court awarded attorney fees as a sanction against Bernardo under section 271 for seeking to change the visitation arrangement. Our reversal of the June 4 Order eliminates the grounds for sanctioning Bernardo, and therefore we also reverse the July 11 Order.

---

[1] We use the parties' first names to avoid confusion, not out of disrespect.

FACTS AND PROCEEDINGS IN THE TRIAL COURT

The marriage of Amanda and Bernardo was dissolved on August 23, 2004. The dissolution judgment awarded Amanda sole physical custody of Jordan (born in 1995) and Juliana (born in 2001), and awarded Bernardo and Amanda joint legal custody.

The dissolution judgment granted Bernardo monitored visitation for six hours every Sunday. On February 25, 2003, Bernardo had pleaded guilty to one count of indecent exposure in violation of Penal Code section 314, subdivision 1. He was sentenced to 30 days in jail, placed on three years' formal probation, and ordered to register under Penal Code section 290. In 2002, Bernardo had pleaded guilty to one count of lewd conduct in violation of Penal Code section 647, subdivision (a) and had been placed on informal probation. The record on appeal does not reveal the ages of the victims of either crime. A partial parenting agreement reached at a mediation in May 2004 included the provision that "father shall have monitored visitation with the children, with the goal of having unmonitored visits once the father's probation is terminated."

Bernardo completed three years of therapy and his probation ended in March 2006. In April 2006, Bernardo, in propria persona, brought an OSC (the First OSC) requesting the trial court to modify the existing child custody order by granting joint physical custody of the children. A hearing on the First OSC was conducted on July 18, 2006. At the hearing, the court soundly advised Bernardo: "I really think you should get a lawyer. This is extremely complex. This is extremely sensitive and extremely difficult. You're not going to be able to do this by yourself. [¶] Get a lawyer and come back when you have done that which the attorney suggested you should do because you're not going to be able to make this happen yourself. It's going to take an experienced lawyer to set this up right, so you're presented as being somebody [who] is not a danger to the children or the community." The court denied the First OSC, and Amanda's counsel agreed to prepare a formal order.

Bernardo obtained counsel and, on September 6, 2006, before entry of the formal order denying the First OSC, brought another OSC (the Second OSC) requesting the custody order be modified to "shared parenting plan with no monitored visits." In a supporting declaration, Bernardo stated his probation had ended in March 2006 "without incident," and he had completed three years of therapy, as his probation officer had directed. Bernardo also stated: "Previously, Amanda allowed me to call and at least speak with the children over the phone. Now, Amanda refuses to allow me to talk to the children at all. All contact whatsoever between the children and I have been cut off by

Amanda since early 2006." He believed, "it is in the children's best interest for them to spend a considerable amount of time with me" and suggested unmonitored visits on alternating weekends. Bernardo stated he intended to call his probation officer to testify at the hearing on the Second OSC.

A formal order denying the First OSC was entered on September 20, 2006. In the order, the court also awarded Amanda sole legal custody of the children and reinstated monitored visitation for Bernardo. Bernardo did not appeal from the September 20, 2006 order.

On September 21, 2006, Bernardo submitted a declaration from his former treating psychologist, Dr. Anthony Fiore, in support of the Second OSC. Dr. Fiore stated: "At no time during my treatment of Mr. Lucio has Mr. Lucio shown any tendencies to perform any sexually deviant acts upon children, especially his own children. In my opinion, Mr. Lucio is not a pedophile and has exhibited no outward signs of being a danger to children. Based upon my treatment of Mr. Lucio, I am confident he presents no harm whatsoever to his children and is free to visit with them without the need for a monitor."

On October 5, 2006, Amanda filed an OSC requesting an award of attorney fees in the amount of $5,000 (the Attorney Fees OSC). She claimed an award of attorney fees was justified because the Second OSC did not describe any circumstances that had changed since the court denied the First OSC. She denied blame for Bernardo's inability to have monitored visitation, claiming Family Assessment, Counseling & Education Services (F.A.C.E.S.) was "unwilling to schedule monitored visitation" due to "the unavailability of an Order directing monitored visitation between [Bernardo] and our minor children to recommence."

On November 1, 2006, Amanda filed a responsive declaration to the Second OSC. She requested the visitation arrangement set forth in the September 20, 2006 order remain in effect because: "[Bernardo] is a registered sex offender and despite having been recently released from formal probation, [Bernardo] continues to refuse to avail himself of monitored visitation arrangements with F.A.C.E.S. which I have attempted to make on numerous occasions. The order to show cause filed by [Bernardo] is almost identical to that which he filed on April 17, 2006 and which was heard and denied by the court on July 18, 2006."

Bernardo retained a clinical and forensic psychologist, Dr. Laura A. Brodie, who interviewed him for an hour and tested him for eight hours between November 29, 2006, and January 8, 2007. In her report, Dr. Brodie concluded: "Psychosexual assessment of Mr. Lucio indicates he has a normal heterosexual interest pattern. He shows no deviant sexual interest in children.

There was no interest in sexual violent themes. [¶] Research has shown that the behavior of exhibitionism is more closely associated with an impulse control disorder and is not associated with pedophilia. There is no indication of current impulse control issues in Mr. Lucio's assessment. Mr. Lucio has completed a three[-]year program and shows insight into understanding his problem, is able to identify his triggers and avoid being in the type of situations that formerly triggered the behavior. He appears open and honest about his behaviors and his role in being unable to see his children without a monitor. [¶] It is my professional opinion Mr. Lucio is not a danger to his children and does not have a deviant sexual interest in children."

The Second OSC and the Attorney Fees OSC were heard on April 24, 2007. At the hearing, the trial court dismissed the Second OSC without prejudice on the ground it was "premature" because it was filed before entry of the formal order on the First OSC. The court requested the parties submit updated income and expense declarations for purposes of the Attorney Fees OSC.

In the June 4 Order, the trial court formally dismissed the Second OSC, stating: "The Court finds that [Bernardo] has failed to allege any change of circumstances having occurred after the last Order was entered on September 20, 2006 as required by *Brown vs. Yana*[, *supra*,] 37 Cal.4th 947 [38 Cal.Rptr.3d 610, 127 P.3d 28] which would allow the Court to consider [Bernardo]'s request as contained in the Order to Show Cause and based thereon dismisses/denies [Bernardo]'s Order to Show Cause in [its] entirety."

The trial court received the parties' updated income and expense declarations and, in the July 11 Order, awarded Amanda $5,000 in attorney fees. The court stated: "*Family Code Section* 3030 is quite specific about custody and unsupervised visitation to P[enal ]C[ode section] 290 registrants such as [Bernardo]. The expert report suggests that he had poor impulse control which he is now over. Given the fact, that one of the victims of the P[enal ]C[ode section] 314[, subdivision ]1 was a 15[-]year[-]old girl, the Court did not believe that this type of behavior is so predictable. The Court believes that the intent of the Statute is rather clear and that [Bernardo]'s chances of prevailing [on the Second OSC] were from the outset rather slim. He and his attorney chose to bring this action and have a hearing in spite of the opposition of [Amanda] and the language of Family Code [section] 3030."[2]

---

[2] Family Code section 3030, subdivision (a)(1) provides: "No person shall be granted physical or legal custody of, or unsupervised visitation with, a child if the person is required to be registered as a sex offender under Section 290 of the Penal Code where the victim was a minor, or if the person has been convicted under Section 273a, 273d, or 647.6 of the Penal Code, unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record. The child may not be placed in a home in which that person resides,

Bernardo timely appealed from the June 4 Order and the July 11 Order.

Discussion

I.

*The Trial Court Erred in Dismissing the Second OSC*
*Because Bernardo Was Not Required to Prove Changed*
*Circumstances to Seek a Change of the Visitation Schedule.*
*The Correct Test Was Best Interests of the Child.*

Bernardo contends the trial court erred by dismissing the Second OSC without granting him a hearing on the ground he failed to prove changed circumstances. He argues, among other things, the changed circumstance rule did not apply to the Second OSC because he was seeking a modification of the monitored visitation order rather than a change in custody.

■ In the recent case of *In re Marriage of Brown & Yana, supra,* 37 Cal.4th 947, 955–956, the California Supreme Court explained: "California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code . . . . Under this scheme, 'the overarching concern is the best interest of the child.' [Citation.] [¶] For purposes of an initial custody determination, section 3040, subdivision (b), affords the trial court and the family ' "the widest discretion to choose a parenting plan that is in the best interest of the child." ' [Citation.] When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents. [Citations.] [¶] Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement. [Citation.] ■ In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. [Citation.] Under the changed circumstance rule, custody modification is appropriate only *if the* parent seeking modification demonstrates 'a significant

nor permitted to have unsupervised visitation with that person, unless the court states the reasons for its findings in writing or on the record."

change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.] Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy. [Citation.] [¶] The Family Code contemplates that, in making a custody determination, consideration of the best interest of the child may lead the trial court to award custody either to both parents (joint or shared custody) or to only one parent (sole custody)." (Fn. omitted.) In that case, the Supreme Court held that where sole legal and physical custody of a child has been awarded to one parent after a contested custody dispute, a noncustodial parent opposing the custodial parent's decision to relocate with the child is not entitled to an evidentiary hearing. (*Id.* at pp. 952, 955.)

■   The changed circumstance rule applies to a modification request seeking a change in a final determination of custody.[3] The changed circumstance rule does not apply to a modification request seeking a change in the parenting or visitation schedule. (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379–1380 [18 Cal.Rptr.3d 306] (*Enrique M.*); *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513 [260 Cal.Rptr. 210] (*Birnbaum*).) In *Birnbaum*, the mother contended the trial court erred by granting the father's request for a modification of the parenting and visitation schedules in a joint custody arrangement without requiring the father to demonstrate changed circumstances. (*Birnbaum, supra,* 211 Cal.App.3d at p. 1513.) The Court of Appeal, affirming, held the changed circumstance rule does not apply when an order does not change custody but only alters a parenting schedule. The court stated: "The basic deficiency in [the mother]'s contention and her appeal from an order she claims changes custody is, whether there were changed circumstances or not, there has been no change of custody. The trial court ordered, 'The parties shall continue to have and share joint legal and joint physical custody of their minor children,' just as

---

[3] Bernardo argues the changed circumstance rule did not apply to the Second OSC because the existing parenting plan was not a final judicial custody determination under *Montenegro v. Diaz* (2001) 26 Cal.4th 249 [109 Cal.Rptr.2d 575, 27 P.3d 289]. In that case, the California Supreme Court held, "a stipulated custody order is a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result." (*Id.* at p. 258.) Bernardo argues the custody and visitation arrangement set forth in the dissolution judgment was not intended to be a final judicial determination because the parties stipulated to the arrangement at a mediation conducted in May 2004. A partial parenting agreement reached at the mediation included the provision that "father shall have monitored visitation with the children, with the goal of having unmonitored visits once the father's probation is terminated."

However, the partial parenting agreement did not create a visitation schedule or resolve a dispute over whether the monitor should be a relation or a professional, stating, "[t]hese issues will need to be addressed by the Court." The inclusion in the dissolution judgment of a comprehensive custody and visitation order resolving the issues left open at the mediation indicates the parties intended the dissolution judgment to be a final judicial custody determination.

they did under the prior order. At most there has been a change in what the trial court termed the 'co-parenting residential arrangement.' " (*Ibid.*)

In *Enrique M.*, the Court of Appeal held the trial court erred by applying the changed circumstance rule to deny a father's request to alter a visitation schedule in a joint custody arrangement. (*Enrique M., supra*, 121 Cal.App.4th at p. 1373.) The Court of Appeal concluded the changed circumstance rule does not apply to requests for modification of parenting or visitation arrangements not amounting to a change in custody. (*Id.* at pp. 1373, 1382.) In reaching this conclusion, the court noted the "California Supreme Court has repeatedly discussed the changed circumstance rule in cases involving requests to modify *custody*, where granting the request would remove custody from one parent and give it to the other parent." (*Id.* at p. 1379.) After discussing *Birnbaum*, the court concluded that case and the Supreme Court decision in *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*) were consistent. (*Enrique M., supra*, 121 Cal.App.4th at p. 1380.)

In *Burgess*, the Supreme Court considered the parents' respective burdens when a parent with sole physical custody of a child seeks to move away. (*Burgess, supra*, 13 Cal.4th at pp. 28–29.) The *Burgess* court held the noncustodial parent bears the burden of establishing the custodial parent's move would cause the child prejudice and a change in custody would be essential or expedient to the child's welfare. (*Id.* at p. 40.) If the noncustodial parent fails to meet that burden, the *Burgess* court confirmed nonetheless "the trial court has broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent in the event of a move . . . ." (*Ibid.*)

This recognition that a trial court has residual and broad discretion to modify visitation orders led the *Enrique M.* court to conclude *Burgess* was consistent with *Birnbaum*. The *Enrique M.* court explained: "The *Burgess* court's statement that a trial court has the discretion to modify visitation orders, without any suggestion that the noncustodial parent would have to demonstrate changed circumstances to justify such changes, is fully consistent with *Birnbaum*. Further, the *Burgess* court's statement that such modifications of visitation could serve to obviate time-consuming custody litigation illustrates the distinction between requests to modify visitation, or parenting time, and requests to modify custody." (*Enrique M., supra*, 121 Cal.App.4th at p. 1381.)

The father in *Enrique M.* requested an alteration in the parenting schedule to give him, each week, one extra overnight with the child and an additional overnight every other week. (*Enrique M., supra*, 121 Cal.App.4th at p. 1382.)

The Court of Appeal stated, "[a]lthough [the father]'s proposed changes would alter the parenting schedule, in terms of potential instability for [the child], they were not on a par with a request to change physical custody from sole to joint custody, or vice versa." (*Ibid.*) Because the father did not seek to modify custody, the Court of Appeal concluded the trial court erred by applying the changed circumstance rule. (*Ibid.*) The court reversed because the trial court had stated it would have reached a different result under the correct standard. (*Ibid.*)

In *Niko v. Foreman* (2006) 144 Cal.App.4th 344 [50 Cal.Rptr.3d 398] (*Niko*), the court addressed the issue of which standard the trial court must use to rule on a move-away request when the parents have joint physical and legal custody of the child. The majority concluded the changed circumstance rule does not apply to a joint custody move-away situation because "modification of the co-parenting arrangements is not a change of custody requiring change of circumstances." (*Id.* at p. 363.) The majority held the trial court "must review de novo the best interest of the child" and may "fashion a new time-share arrangement for the parents." (*Id.* at p. 364.) The dissent disagreed, reasoning that moving a child out of state with one custodial parent constitutes a change in a final custody judgment and, therefore, is permitted only on a showing of changed circumstances. (*Id.* at pp. 371–372 (dis. opn. of Bedsworth, J.).)

*Birnbaum, Enrique M.*, and *Niko* concerned requests to change a parenting or visitation schedule in a joint custody arrangement, while in this case, Amanda had sole physical custody of the children. The reason for not requiring a showing of changed circumstances is equally applicable to a request to alter the visitation schedule when one parent has sole physical custody. In *Enrique M.*, the court explained the changed circumstance rule is based in part on the need to protect stable custody arrangements believed to be in the child's best interest. (*Enrique M., supra*, 121 Cal.App.4th at p. 1382.) The changed circumstance rule promotes such stability "by preventing the reexamination of final judicial determinations of custody in the absence of 'some significant change in circumstances.' " (*Ibid.*) Unlike a change in custody, an alteration in a parenting or visitation schedule does not cause a disruption in " 'established patterns of care and emotional bonds with the primary caretaker' " (*In re Marriage of Brown & Yana, supra*, 37 Cal.4th at p. 956) justifying the added burden of demonstrating changed circumstances.

The same is true when one parent has sole physical custody, and the change does not amount to a move-away: An alteration to the noncustodial parent's visitation schedule would not destabilize the custody arrangement, or disrupt established patterns of care and emotional bonds, particularly when, as here, the noncustodial parent already has visitation rights.

The Second OSC did not seek a change in custody. The dissolution judgment awarded Amanda sole physical custody and granted Bernardo monitored visitation on Sundays. In the Second OSC, Bernardo requested a change in the parenting schedule so he could have unmonitored visits with his children from Friday night to Sunday night on alternate weeks. The concerns expressed by the dissent in *Niko* are not pertinent to this case because it does not involve a move-away request.

Bernardo's requested alterations to the existing parenting and visitation schedules would not have created a de facto joint custody arrangement. (See *In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 760 [76 Cal.Rptr.2d 717] [when father has right to visits on alternate weekends and one week-night each week, custody was not joint custody].) The requested alterations would not disrupt the children's established patterns of care and emotional bonds with Amanda or destabilize the sole physical custody arrangement. As in *Enrique M.*, Bernardo's proposed changes to the visitation schedule, though altering the parenting schedule, were not "on a par with a request to change physical custody from sole to joint custody, or vice versa." (*Enrique M., supra*, 121 Cal.App.4th at p. 1382.)

■ Because the Second OSC did not seek a change of custody, Bernardo was not required to demonstrate changed circumstances. The trial court therefore erred by dismissing the Second OSC on the ground Bernardo failed to allege a change in circumstances occurring since the order denying the First OSC was entered on September 20, 2006.

■ We conclude Bernardo's request to change the parenting and visitation arrangements is subject to the child's best interest standard: "Apparently, a party seeking to modify only *visitation* and not the allocation of 'custody' between the parents is held solely to the normal 'child's best interest' standard of proof; the changed circumstances rule does *not* apply. No known reported decision is expressly on 'all fours' with this conclusion. But it is consistent with the rule governing modifications of 'parenting time' under a joint custody order . . . ; and it seems to have at least indirect support from the Cal[ifornia] Supreme Court . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2007) ¶ 17:302, p. 17-74 (rev. #1, 2007); see also *Burgess, supra*, 13 Cal.4th at p. 40 ["the trial court has broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent"].)

In the June 4 Order, the trial court stated it was not allowed even to consider Bernardo's request for modification of parenting and visitation because Bernardo had not alleged changed circumstances. Yet, in granting the Attorney Fees OSC, the trial court stated, "the intent of [Family Code section 3030] is rather clear and that [Bernardo]'s chances of prevailing were from the outset rather slim." Based on these statements, we cannot tell how the trial court might have exercised its discretion if it had considered the request and supporting evidence under the correct standard.[4] Nor can we say, based on the record before us, the Second OSC could have been granted or denied as a matter of law. Accordingly, we reverse and remand for the trial court to consider the Second OSC request for modification of visitation rights under the correct standard.

II.

*The Trial Court Erred by Granting the Attorney Fees OSC and Awarding Fees as a Sanction Against Bernardo.*

In the July 11 Order, the trial court awarded Amanda $5,000 in attorney fees. Bernardo contends the trial court awarded those fees as a sanction against him pursuant to Family Code section 271 and, therefore, the attorney fees award must be reversed along with the June 4 Order. Amanda contends the attorney fees should be affirmed regardless of our decision on the June 4 Order because the trial court awarded them based on need and ability to pay pursuant to Family Code sections 2030 and 2032. Our review of the July 11 Order and the Attorney Fees OSC leads us to conclude the court awarded attorney fees as a sanction against Bernardo under section 271.

Subdivision (a) of Family Code section 271 permits a trial court to award attorney fees and costs as a sanction based on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." The

---

[4] At oral argument on appeal, Amanda's counsel asserted Bernardo failed to meet his burden of justifying an alteration in visitation because the declarations he submitted from Dr. Fiore and Dr. Brodie were inadmissible. Amanda's counsel objected to the declarations, but the trial court did not rule on the objections. Because the trial court never reached the merits of Bernardo's modification request, having dismissed it for failing to allege changed circumstances, we do not know whether the court would have permitted live testimony or would have exercised its discretion to rely on the declarations instead. (See *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 483–484 [114 Cal.Rptr. 356].)

party requesting an attorney fees award under section 271 is not required to demonstrate financial need for the award. (*Id.*, subd. (a).) "[S]ection 271 sanctions have been upheld for 'obstreperous conduct which frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase . . . .' " (*In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, 6 [33 Cal.Rptr.3d 237].)

■ Subdivision (a)(1) of Family Code section 2030 permits the trial court to order one party to pay the other party's attorney fees "if necessary based on the income and needs assessments" to "ensure that each party has access to legal representation to preserve each party's rights." The court may order payment of "whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (*Ibid.*) The court may award attorney fees and costs "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (Fam. Code, § 2032, subd. (a).) In determining what is just and reasonable, "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in [Family Code] Section 4320." (*Id.*, subd. (b).)

The Attorney Fees OSC did not identify the statutory basis for the request. Amanda's declaration in support of the Attorney Fees OSC asserts (1) the Second OSC was "virtually identical" to the First OSC; and (2) Amanda attempted to reinstate monitored visitation between Bernardo and the children, but he was "apparently adamant in his quest to relitigate" the issues presented by the First OSC. Those assertions suggest Amanda sought attorney fees as a sanction under Family Code section 271. The declaration also asserts, however, that "[Bernardo]'s refiling of this action has resulted in the necessity for me to borrow substantial sums for representation in this matter and I request [Bernardo] be ordered to pay a contributive portion of my attorney's fees and costs incurred in this proceeding." This assertion suggests Amanda sought a needs/abilities award under Family Code section 2030.

In the July 11 Order, the trial court did not identify the statutory basis for the attorney fees award. The more reasonable interpretation of the July 11 Order is that it awarded attorney fees to Amanda as a sanction against Bernardo pursuant to Family Code section 271.

The July 11 Order makes plain the court's belief the Second OSC was an attempt to relitigate the First OSC. The court emphasized its remarks made at the hearing on the First OSC were "NOT intended to be nor does a fair reading of these remarks suggest that this was an invitation to come back when he got a lawyer." The court stated it believed Bernardo's chances of prevailing on the Second OSC were "rather slim" from the outset, because Bernardo was subject to Family Code section 3030, yet "[h]e and his attorney chose to bring this action and have a hearing in spite of the opposition of [Amanda] and the language of Family Code [section] 3030."[5] These comments strongly support the conclusion the trial court awarded attorney fees as a sanction under Family Code section 271.

The trial court found the amount of fees requested was reasonable, but made no finding as to Amanda's needs or whether the fees awarded were just under the circumstances. The trial court did find Bernardo had the ability to pay the fees awarded. Family Code section 271, subdivision (a) states, "[t]he court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." In contrast, Family Code section 2032, subdivision (b) states, "[f]inancial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

As a sanction under Family Code section 271, the attorney fees award against Bernardo cannot stand because we are reversing the order dismissing the Second OSC and remanding for the trial court to consider it under the correct standard. Further, the Second OSC was not merely an attempt to relitigate the First OSC: The Second OSC differed from the first by seeking a change in the visitation schedule rather than a change in custody. When Bernardo sought unmonitored visits, he had completed probation and therapy, and at the mediation the parties set for themselves a goal of unmonitored visits. The record as presented to us does not indicate whether Bernardo is subject to Family Code section 3030. Considering those circumstances, Bernardo should not have been sanctioned for trying to obtain unmonitored visits.

Our decision is without prejudice to the trial court considering an award of attorney fees under Family Code section 2030 in future proceedings.

---

[5] The trial court stated one of Bernardo's victims was a 15-year-old girl, and, therefore, Family Code section 3030 required the court to find unmonitored visitation posed no significant risk to the children. Our review of the appellate record has not disclosed any victim's age.

## DISPOSITION

The postjudgment custody modification order entered on June 4, 2007, and the postjudgment order entered on July 11, 2007, are reversed and the matter is remanded. Appellant shall recover costs incurred on appeal.

Bedsworth, Acting P. J., and Ikola, J., concurred.