Filed 9/15/14  Marriage of Tsatryan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of ARTHUR and POLINA TSATRYAN. | B247448 |
| | (Los Angeles County Super. Ct. No. BD512645) |
| ARTHUR TSATRYAN, Appellant, v. POLINA TSATRYAN, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maren E. Nelson, Judge.  Affirmed in part and dismissed in part.

Arthur Tsatryan, in pro. per., for Appellant.

Polina Tsatryan, in pro. per., for Respondent.

————————————

## INTRODUCTION

Arthur Tsatryan appeals from an order denying his request to change child custody and his motion to relieve the child's court-appointed counsel. We affirm the trial court's order denying the motion to relieve counsel and dismiss the appeal from the trial court's order denying the request to change custody.

## FACTUAL AND PROCEDURAL BACKGROUND

Arthur and Polina Tsatryan were married on August 5, 1987. They separated on August 3, 2009, and Arthur[1] filed a petition for dissolution of marriage on September 23, 2009. The parties have three sons. The youngest, Alexander, born in 2001, was a minor at the time Arthur filed his dissolution petition.

After almost two years of acrimonious litigation, the trial court on September 6, 2011 indicated that it was granting Arthur and Polina joint legal custody over Alexander. Pursuant to stipulation, Polina retained primary physical custody over Alexander, and Arthur had visitation on alternate weekends. The court set a hearing on child custody and visitation for April 5, 2012.

After a number of continuances and further sparring, the trial court on July 10, 2012 appointed David E. Rickett to serve as counsel for Alexander, pursuant to Family Code section 3150.[2] The reason for this appointment was to "[a]rticulate whether

---

[1] For convenience and clarity, and intending no disrespect, we refer to the parties by their first names. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 817, fn. 1; *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072, fn. 1.)

[2] Family Code section 3150 provides: "(a) If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court. [¶] (b) Upon entering an appearance on behalf of a child

[Alexander] wishes to be heard; advise as to [Alexander's] level of maturity; [and] represent [Alexander] if his testimony is taken."

About this time there was a dispute over which school Alexander would attend for sixth grade. Arthur wanted Alexander to attend the Millikan Middle School Math Academy, citing Alexander's love for, and aptitude in, mathematics. He claimed it was in Alexander's best interests to allow him to attend Millikan Middle School.

Rickett filed a declaration in which he stated that he had researched three possible schools for Alexander to attend: Tesoro del Valle, which Alexander had attended since kindergarten; Millikan; and Ivy Academia. Rickett noted that Tesoro was within walking distance of Alexander's home, while Millikan and Ivy were over half an hour away. After speaking with Tesoro's principal regarding the school's ability to provide Alexander with a challenging mathematics curriculum, Rickett concluded there was no reason to transfer him to another school.[3]

On July 30, 2012 the trial court ordered that Alexander attend Tesoro for sixth grade and that neither party apply to enroll Alexander in any school for seventh grade without consent of the other party. The court also ordered Arthur and Polina to enroll in co-parenting counseling for at least 12 sessions with a counselor experienced in high conflict cases.

On August 29, 2012 the trial court made an order modifying custody of Alexander. The court granted the parties joint legal and physical custody of Alexander, with each party having alternate weeks with Alexander.

pursuant to this chapter, counsel shall continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause."

[3] Rickett also noted it appeared that the issue of changing schools arose when Polina applied to enroll Alexander in seventh grade at Lawrence Middle School, but the school accepted him into the sixth grade. Polina discussed this with Arthur, who took it to mean she was changing Alexander's school. Rickett suggested that Polina and Arthur attend joint counseling to work on their communication skills so they could discuss Alexander's needs in a more productive manner.

On November 26, 2012 the trial court ordered each party to pay Rickett $4,760 in attorneys' fees. On January 9, 2013 Arthur filed a motion to relieve[4] Rickett as Alexander's counsel, claiming that Rickett was not representing Alexander's best interests because he was not conducting accurate legal research and was not in touch with Alexander. Specifically, Arthur complained that Rickett did not talk to any of Alexander's friends, teachers, or family members in making his recommendation that Alexander remain at Tesoro. Arthur also asserted that Rickett had failed to file a motion to compel Polina to attend parenting sessions. Arthur complained that Rickett was "simply running up the attorney's fees just chatting through emails, phone conversations, in absence of any legal necessity for his actions." Arthur stated in his accompanying declaration that Rickett misunderstood the facts of the case and conducted faulty research into the schools available to Alexander. Arthur also stated that while Rickett had advised the court that Alexander did not have a preference for one school over another, Alexander had told Arthur that he wanted to attend the Millikan Math Academy.

On January 28, 2013 Arthur filed a request for modification of child custody and support, seeking legal and physical custody of Alexander, with visitation for Polina on alternate weekends. He also sought child support from Polina and an order compelling her to attend 52 parenting sessions. In his supporting declaration, Arthur challenged Polina's ability to care for Alexander. He claimed Polina was attempting to alienate Alexander from him and was not obeying court orders, such as the order to attend counseling.

Rickett opposed any change in custody. In his response to Arthur's motion, Rickett filed a declaration explaining that he understood the facts of the case and that his recommendation that Alexander attend Tesoro was not faulty. According to Rickett, Arthur did not recognize that his failure to communicate with Polina regarding school choice was not in Alexander's best interest. Rickett also stated that Arthur had not

---

**4**      Arthur titled it a motion to "release" Rickett.

4

presented any admissible evidence that a change of custody was in Alexander's best interest and that the current custody arrangement was working well for Alexander. Rickett filed a supplemental declaration stating that Arthur had unilaterally withdrawn Alexander from his school and enrolled him at Millikan and had refused to allow Alexander to attend his Tae-Kwan-Do class during the weeks that Alexander was in Arthur's custody. Rickett also complained that Arthur was discussing the case with Alexander.

On February 19, 2013 the trial court denied Arthur's motion to relieve Rickett and his request for modification of child custody. With respect to the change in custody request, the court ruled that Arthur had not shown it was in Alexander's best interest to make a change. The court also stated that there was no reason to make a change in custody before the trial, which was set for the near future. The court also reminded the parents that, in connection with making a permanent custody order at trial, the court would consider the level of communication between the parents and whether they improperly attempted to influence Alexander. The court enjoined each parent from having any contact with Alexander during the other parent's custodial time. The court said it was "unfortunate that we have to make that kind of order, but I think both parents are at a point where they have just put this child so far in the middle, that it is better for him if he just does not hear from the other parent during custodial time." The court also ordered each parent to take Alexander to his extracurricular activities when he was in their respective custody. Arthur appeals from the orders denying his request for a modification in child custody and refusing to relieve Rickett.

## DISCUSSION

Arthur cites no authority suggesting that the order denying his request for modification of child custody and his motion to relieve counsel is appealable.[5] "[I]t is well settled that temporary custody orders are nonappealable." (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1089.) "'A temporary custody order is interlocutory by definition, since it is made pendente lite with the intent that it will be superseded by an award of custody after trial. (Fam. Code, §§ 3022, 3040, 3060-3062.) Code of Civil Procedure section 904.1 bars appeal from interlocutory judgments or orders "other than as provided in paragraphs (8), (9), and (11). . . ." (Code Civ. Proc., § 904.1, subd. (a)(1)(A).) Temporary custody orders are not listed in any of those paragraphs. Therefore this statute precludes the appealability of such orders. [¶] This result is in accord with the general rule that, under the "one final judgment" rule, appeal lies only from final judgments in actions or proceedings, or from orders after judgment that affect the judgment or its enforcement; it does not lie from interlocutory judgments or orders unless specifically made appealable by statute. [Citations.]' [Citation.]" (*Smith*, *supra*, at p. 1090.) Because a temporary custody order is not appealable, an order refusing to modify a temporary custody order is also nonappealable. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559; cf. *In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 686 [order denying motion to correct minute order not appealable].) Therefore, we dismiss Arthur's appeal from the trial court's order denying his motion to modify custody of Alexander.

---

[5] "'Whenever there is doubt as to whether we have jurisdiction to hear an appeal, we must raise that issue on our own initiative.' [Citation.]" (*In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1432.) Pursuant to Government Code section 68081, we gave the parties an opportunity to file supplemental briefs regarding the appealability of the trial court's orders denying Arthur's request for a custody modification and denying Arthur's motion to relieve Rickett as counsel for Alexander.

An order denying a motion to relieve counsel during the pendency of litigation is also interlocutory.  Although such an order appears nonappealable, we have found no authority on the issue.  In civil cases, however, courts have held that analogous orders disqualifying counsel are appealable, for various reasons.  (See *Orange County Water Dist. v. The Arnold Engineering Co.* (2011) 196 Cal.App.4th 1110, 1116, fn. 2 ["order granting or denying a motion to disqualify counsel is immediately appealable as an injunction order"]; *Kullar v. Foot Locker Retail, Inc.* (2011) 191 Cal.App.4th 1201, 1204, fn. 2 ["[a]lthough the preferred and more expedient method of challenging an order denying a motion to disqualify counsel is by seeking a writ of mandate, such an order is appealable]; *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1354, fn. 2 ["order granting the motion to disqualify counsel is appealable as a final order on a collateral matter"].)

To the extent the trial court's order denying Arthur's motion to relieve Rickett is appealable, there is no merit to Arthur's appeal.  Family Code section 3150, subdivision (b), provides that counsel appointed to represent the interests of a child "shall continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause."  (See also Cal. Rules of Court, rule 5.240(f)(4) [counsel appointed to represent a child in family law proceedings "must continue to represent that child until," among other events, "[r]emoved on the court's own motion or request of counsel or parties for good cause shown"]; cf. *In re Jesse C.* (1999) 71 Cal.App.4th 1481, 1486 [in dependency proceedings counsel for minors may be relieved "for cause"].)  The court has cause to relieve counsel appointed to represent the child if, for example, counsel was unable or unfit to represent the child or if the representation was of no benefit to the child.  (See *In re Jesse C.*, *supra*, at p. 1489.)

Arthur did not demonstrate that Rickett was unable to represent Alexander properly or competently, or that Rickett's representation was of no benefit to Alexander.  Rickett did the research necessary to determine that Alexander would continue to receive a good education if he remained at the school he currently attended, Tesoro.  Rickett was not required to interview all of Alexander's teachers, his friends, and others who knew

Alexander and collect and analyze all of their opinions on which school Alexander should attend. The fact that Rickett did not agree with Arthur's assessment of the alternatives for Alexander's education did not mean that Rickett did not understand the situation or that Rickett was making a recommendation that was not in Alexander's best interest. (See Fam. Code, § 3151, subd. (a); Cal. Rules of Court, rule 5.242(j).)[6] Nor did Rickett have to file a motion to compel Polina to attend the court-ordered counseling sessions. The court addressed that issue when Arthur raised it, advising both Arthur and Polina that "if either parent is shown at trial to fail to comply with the court's orders regarding counseling, . . . that's something that the court will take into account at trial about whether the parent is really acting in the best interest of the child or not."

Rickett was doing an adequate job representing Alexander. (See Fam. Code, § 3151, subd. (a); *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1446 [discussing the duties of counsel under Family Code section 3151].) The trial court did not abuse its discretion in denying Arthur's motion to relieve Rickett. (See *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 ["[o]ur review of appellant's motion to disqualify respondent's counsel is constrained by the principle that reversal

---

[6]     Subdivision (a) of Family Code section 3151 provides: "The child's counsel appointed under this chapter is charged with the representation of the child's best interests. The role of the child's counsel is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel shall present the child's wishes to the court. The counsel's duties, unless under the circumstances it is inappropriate to exercise the duty, include interviewing the child, reviewing the court files and all accessible relevant records available to both parties, and making any further investigations as the counsel considers necessary to ascertain evidence relevant to the custody or visitation hearings."

Rule 5.242(j) of the California Rules of Court provides: "Counsel is charged with the representation of the child's best interest. The role of the child's counsel is to gather evidence that bears on the best interest of the child and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel must present the child's wishes to the court." This rule also provides that counsel's duties include those listed in Family Code section 3151.

8

may be predicated only upon a showing of abuse of the trial court's discretion"]; cf. *People v. Vines* (2011) 51 Cal.4th 830, 878 ["[b]ecause the record does not clearly show counsel's performance was inadequate, the trial court did not abuse its discretion in refusing to relieve counsel"].)

## DISPOSITION

The trial court's order denying Arthur's motion to relieve counsel for Alexander is affirmed. The appeal from the trial court's order denying Arthur's request to modify custody of Alexander is dismissed. Polina is to recover her costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.

WOODS, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.