Filed 1/30/23; Certified for Publication 3/1/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| KERRY ANN JOHNSTON-ROSSI,<br><br>    Plaintiff and Appellant,<br><br>           v.<br><br>PAUL ROSSI,<br><br>    Defendant and Respondent. | B318522<br><br>(Los Angeles County<br>Super. Ct. No. BD542090) |

APPEAL from an order of the Superior Court of Los Angeles County.  Steven A. Ellis, Judge.  Reversed.

Summers Levine & Kretzmer, Michael J. Kretzmer; Greines, Martin, Stein & Richland, Robert A. Olson, Cynthia Tobisman, Eleanor S. Ruth, Tina Kuang; Hall Family Law and Stefanie Hall for Plaintiff and Appellant.

Arbogast Law, David M. Arbogast; Ovando Bowen and Chumahan B. Bowen for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant Kerry Ann Johnston-Rossi (mother) appeals from the postjudgment order modifying the parenting plan between her and her former husband, defendant and respondent Paul Rossi (father) with respect to their two minor children. Mother contends the family court abused its discretion in ordering the children to participate with father in a therapy program operated by Family Bridges which mandated no contact with mother for a minimum of 90 days.

We agree the court abused its discretion and reverse the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and father married in 2004. During their marriage, they had two children, a daughter B.R. and a son D.R. Mother and father separated after six years of marriage, and their final judgment of dissolution was entered on October 16, 2012. At the time of dissolution, both mother and father lived in Los Angeles, and the court ordered joint legal and physical custody of the children.

In April 2015, mother obtained a domestic violence restraining order against father and an order allowing her to relocate with the children to Canada. The court ordered that B.R. and D.R. "shall reside" with mother "at all times except for the custodial parenting time awarded to [father]." Father was given time with the children during breaks in their school year, and he shared alternating holidays with mother, in addition to regular weekly visitation via telephone or videochats (e.g., FaceTime). Mother subsequently was allowed to relocate with the children to New York, their current state of residence. B.R. and D.R. are now in high school.

**The Orders by Judge Dianna Gould-Saltman**

After mother relocated with the children to New York, both mother and father sought postjudgment modifications to the parenting plan and related orders. In the fall of 2020, Judge Dianna Gould-Saltman heard several days of testimony, including from mother, father, B.R., Dr. Stan Katz, and Jayne Roberman.

Dr. Katz, who was appointed to conduct child custody evaluations, testified he felt additional monitored visitation with father in New York was warranted and that the family would also benefit from the appointment of a parenting coach. In discussing different family therapy programs that might be considered, Dr. Katz told the court he was familiar with and approved of a program run by Rebecca Bailey. Dr. Katz said her program was flexible, could be customized to fit the specific needs of the family, and allowed both parents to participate. Dr. Katz was less familiar with the Family Bridges program, but said he understood it had success in cases of severe parental alienation. He described the program as "the most extreme" because it required removal of the child from the custody of the parent with whom the child was aligned (in this case, mother). Dr. Katz said Family Bridges "doesn't allow for the aligned parent to be involved at all." Dr. Katz believed the Family Bridges program lasted about five to seven days which was usually followed by a period of time where the aligned parent was not allowed any contact with the child, except potentially therapeutic contact. Dr. Katz was not in favor of restrictive programs like Family Bridges unless "nothing else ha[d] worked" to help rebuild a child's relationship with an alienated parent. He said he did not

3

think such a program was necessary for B.R. and D.R. and hoped it would not become necessary.

Ms. Roberman, who was appointed to provide reunification therapy for the family, believed both children were resistant to spending time with father, and that a team approach was warranted. She told the court "the family needs a more intensive, family-focused therapy to include relationships the children have with both parents, addressing effective means for the parents to resolve conflict and more effectively communicate."

Mother and father each presented an expert who critiqued the recommendations made by Dr. Katz.

After the hearing, Judge Gould-Saltman issued an order requiring additional counseling for the children. Because of the pandemic, the court allowed the sessions to be completed remotely. The court also awarded father additional visitation time with the children in New York on the first and third weekends of each month. Because the pandemic was making travel and contact between different households difficult in the winter of 2020, the court ordered that a review hearing be set to monitor whether the parties were complying with its order and to see how father's visitation and the children's therapy sessions were going.

The review hearing was held July 22, 2021. The court heard testimony from B.R., mother, father, and father's girlfriend, primarily focused on how father's visits with the children in New York had been going since the last hearing. Father had been unable to make several of the visits. The visits that had occurred had not gone well, but there had been some enjoyable time spent bike riding and visiting a museum.

On August 17, 2021, Judge Gould-Saltman issued a written order that addressed various matters.  As relevant here, the court ordered that father was allowed to have a week vacation time during the summer with the children in Los Angeles.  Further, the court ordered that father was permitted to enroll himself and the children in "a week-long program such as Family Bridges or Turning Point" and in the event he chose to do so, father was entitled to have "the children during the week-long program" in Los Angeles in addition to his one week of summer vacation time with them in Los Angeles.

Mother filed an appeal from the August 17, 2021 order which she subsequently dismissed.

**The Order by Judge Steven A. Ellis**

About a month later, father filed a new motion requesting further orders modifying the parenting plan in order to allow him uninterrupted time with B.R. and D.R. to complete both the in-person portion of the Family Bridges program and the "Family Bridges required post aftercare."  According to father's declaration, the program starts with a four-day in-person therapy component followed by a minimum of 90 days of "aftercare" which would require no contact between the children and mother.  Father submitted paperwork from Family Bridges confirming the scope of the program.  Father testified he was advised by Dr. Randy Rand of Family Bridges that he could not enroll in the program without a court order requiring the children's participation in the 90-day aftercare portion of the therapy.  Father said he had no interest in taking custody from mother and "fully expect[ed] for custody to return to 50/50 in [New York] once the program is successfully completed."

Mother opposed father's request for an order requiring the children to participate in the Family Bridges program and requiring them to be removed from her custody for 90 days or more. Mother filed notice, pursuant to Family Code section 217, of her intent to present live testimony at the hearing, including the testimony of B.R. and D.R. Mother contended that, as teenagers, they were entitled to testify about the prospect of being ordered out of their home and excluded from talking to their mother.

The hearing on defendant's motion was held on November 8, 2021 before a different judge, Judge Ellis. Judge Ellis denied mother's request to present witnesses. The court found good cause to deny an evidentiary hearing on the basis that Judge Gould-Saltman, in her August 2021 order, had "already resolved" the substantive issues regarding the Family Bridges program. The court then heard argument from the parties on how the Family Bridges program could be completed without interfering with the children's schooling and whether it was feasible for the program to be completed in Los Angeles.

On December 22, 2021, Judge Ellis issued a nine-page order allowing father to have custody of the children for the time necessary to complete the Family Bridges program and outlining alternative procedures depending on whether the program was completed in Los Angeles or New York. Judge Ellis ordered that participation in the Family Bridges program was not to interrupt the children's regular schooling in New York. If the program, including the minimum 90-day aftercare portion, could not be completed in Los Angeles during the summer break, then it would have to be completed in New York with father arranging

for a residence in New York during the school year where he and the children would reside.

Judge Ellis found it was in the best interest of the children to have no contact with mother during the Family Bridges program unless the parties otherwise agreed or by further order of the court. "Contact" was defined to include telephone calls, text messages, letters and all forms of digital contact or correspondence. Judge Ellis ordered that once the Family Bridges program was completed, B.R. and D.R. "will be able to move back with mother and the prior custody order will be reimplemented subject to any further order of the court."

This appeal followed. We granted mother's writ of supersedeas, staying the order pending resolution of this appeal.

## DISCUSSION

### 1. Applicable Law

The overarching concern of California's child custody and visitation law is the best interest of the child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*).) Where, as here, there is a final custody determination in place, a postjudgment request to modify custody requires the moving party to demonstrate not just the best interest of the child but changed circumstances. (*Id.* at p. 256.) "Under the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she *demonstrates a significant change of circumstances justifying a modification*." (*Ibid.*, italics added.)

Once a final custody determination has been made, "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the

primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32–33.) The changed circumstances rule " 'fosters the dual goals of judicial economy and protecting stable custody arrangements.' " (*Montenegro, supra*, 26 Cal.4th at p. 256; accord, *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955–956 & *In re Marriage of McKean* (2019) 41 Cal.App.5th 1083, 1089.)

Unlike postjudgment modifications of custody orders, postjudgment modifications of visitation and the parenting plan are governed by the statutory best interest of the child test, and the changed circumstance rule does not apply. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077; accord, *In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 827 [the appropriate standard for ordering a modification in parenting authority that does not rise to the level of a change in custody is the best interests test].) Relevant factors for the court to consider in determining the best interest of the child include the health, safety and welfare of the child, any history of physical or substance abuse by either parent, and the nature and amount of contact with each parent. (Fam. Code, § 3011, subd. (a).)

We review custody and visitation orders under the deferential abuse of discretion test. (*Montenegro, supra*, 26 Cal.4th at p. 255; accord, *In re Marriage of Burgess, supra*, 13 Cal.4th at p. 32 & *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.) The "precise measure" of whether the family court abused its discretion is whether the court "could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess,* at p. 32.) To the extent mother's appeal challenges the trial court's

8

factual findings, our review is governed by the substantial evidence test.  (*Chalmers,* at p. 300.)

**2.      The Family Court Abused Its Discretion in Ordering the Children to Participate in the Family Bridges Program with Father.**

Mother contends Judge Ellis erred by failing to apply the changed circumstance rule.  She says father did not show a significant change in circumstances that warranted B.R. and D.R. being removed from her custody to participate in the Family Bridges program, and the court abused its discretion by granting father's modification request without requiring such a showing.  She also claims the court abused its discretion in denying her request to present testimony at the hearing, and that the record does not contain substantial evidence demonstrating the modification was in the children's best interest.

Father argues Judge Ellis, in ordering the Family Bridges program in December 2021, was merely implementing Judge Gould-Saltman's order of August 17, 2021.  He contends we should affirm Judge Ellis's order but also says that given the passage of time, we should remand for further proceedings to allow the family court the opportunity to reconsider what type of program is in the best interests of the children at this time.

The practical effect of the December 2021 modification order was to remove B.R. and D.R. from mother's custody for at least 90 days.  The order concedes as much by concluding with the language that after completion of the Family Bridges program "the prior custody order will be reimplemented subject to any further order of the court."  Judge Ellis ordered this modification without any evidence of changed circumstances.

9

Nothing in the record supports the court's finding that this significant disruption to the children's established living arrangement with mother was in their best interest. The order requires the children, for a minimum period of three months, to be moved out of their home and either moved across the country to Los Angeles if the Family Bridges program can be completed during a school break, or moved into a new home in New York with father until the program can be completed there during the school year. The children would not be allowed any contact with mother during this disruptive period.

The order was based on the incorrect assumption that Judge Gould-Saltman had already ordered the children to participate in the Family Bridges program. Judge Gould-Saltman's order did not direct the children to participate in Family Bridges, or in any other program that might last more than one week. The order granted father one week of vacation time with the children in Los Angeles during their summer break, and also permitted father to enroll himself and the children in "a week-long program such as Family Bridges or Turning Point." In the event father chose to enroll himself and the children in a conjoint therapy program in Los Angeles, the court ordered that he was entitled to have "the children during *the week-long program*" in addition to his one week of summer vacation with the children. (Italics added.)

The fact Judge Gould-Saltman was apparently under the mistaken impression the Family Bridges program was one of the therapy programs that could be completed in one week underscores the fact that all of the details related to Family Bridges had not been fleshed out and resolved by Judge Gould-

Saltman, let alone the factual issues related to removing the children from mother's custody for a minimum of 90 days.

In denying mother's request for an evidentiary hearing, Judge Ellis prevented mother from offering evidence relevant to the propriety of ordering the children to participate in a 90-day Family Bridges program during which they would be deprived of all contact with mother. The court's finding that good cause supported the denial of an evidentiary hearing because Judge Gould-Saltman had already resolved the substantive issues regarding the Family Bridges program is not supported by the record as we already explained above.

Without evidence that it is in the best interest of the children to remove them from mother's custody for a period of at least 90 days in order to participate in the Family Bridges program, the court abused its discretion in issuing its order of December 22, 2021. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.)

We deny mother's requests to take judicial notice of records related to father's 2020 felony conviction for a violation of Penal Code section 245, subdivision (a)(1) as the records are not relevant to our decision.

## DISPOSITION

The order of December 22, 2021 ordering the children to participate in the Family Bridges program is reversed. Plaintiff and appellant is awarded costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.          VIRAMONTES, J.

11

Filed 3/1/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KERRY ANN JOHNSTON-ROSSI,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>PAUL ROSSI,<br><br>  Defendant and Respondent. | B318522<br><br>(Los Angeles County<br> Super. Ct. No. BD542090)<br><br>**ORDER CERTIFYING<br>OPINION<br>FOR PUBLICATION**<br><br>**[No change in judgment]** |

THE COURT:

     The opinion in the above-entitled matter filed on January 30, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in the judgment.

_____

STRATTON, P. J.       GRIMES, J.     VIRAMONTES, J.