Filed 12/20/24  Marriage of Saint and Garza CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of JEFFREY SAINT and CHRISTINA GARZA. | |
| | A168860 |
| JEFFREY SAINT,<br>        Appellant,<br>v.<br>CHRISTINA GARZA,<br>        Respondent. | (Solano County Super. Ct.<br> No. FFL156531) |

Jeffrey Saint, who resides in Michigan, and Christina Garza, who resides in California, share joint legal and physical custody of their child (the minor).

The minor was born in born in September 2017.  Since 2020, the minor split her time between California and Michigan pursuant to a temporary custody agreement.  In January 2022, Saint filed a request to be granted primary custody of the minor during the school year.  The trial court denied the request and entered a custody order designating Garza as the parent with whom the minor should reside during the school year.  We affirm the order.

1

In 2020, Saint filed a petition to determine parental relationship regarding the minor, who was almost three years old at that time. The court awarded joint legal and physical custody of the minor, with visitation for each parent on alternating weeks. The court noted Saint could exercise his parenting time in either California or Michigan.

The minor subsequently began traveling every weekend between Michigan and California, spending alternating weeks in each state. Garza filed a request to award her primary physical custody, with visitation for Saint, based on the impact to the minor of traveling every weekend between states. Saint opposed the request but proposed amending the custody schedule to alternating two-week periods for each parent. The court initially modified the custody order to allow for three-week periods, and subsequently modified the custody schedule to four-week periods.

In 2022, the parties again sought to modify the custody schedule. Saint filed a request for an order granting him physical custody of the minor to be able to enroll her in kindergarten in Michigan. In response, Garza requested the minor remain in California for school.

The court ordered the parents to submit to a full custody evaluation with Dr. Jacqueline Singer and scheduled an evidentiary hearing.

In advance of the trial, Dr. Singer submitted her report to the court. She noted the purpose of the report was to "make a recommendation related to which parent shall be the primary custodial parent and what custodial schedule is appropriate and in the child's best interests." After evaluating various factors such as stability and continuity, the minor's relationship with both parents, the relationship between the parents, the parents' ability to support the minor's relationship with the distant parent, and social capital,

Dr. Singer concluded "it appears that [Saint's] environment offers [the minor] more stability, and developmentally appropriate support, and he provides better communication, information, and support of [the minor's] relationship with her mother than [Garza] does with [Saint]." Dr. Singer further expressed concern regarding Garza's "psychological make-up and her ability to communicate in a straightforward manner," and believed Saint would better support a long-distance relationship with Garza. Accordingly, Dr. Singer recommended the minor reside with Saint during the school year.

Trial occurred over twelve days, with extensive testimony from, among others, the parents and Dr. Singer. Following trial, the parties submitted written closing arguments. Garza asserted Saint's request to have primary physical custody of the minor should be denied because he: (1) used derogatory language in reference to Garza and her family; (2) engaged in controlling behavior to keep Garza in Michigan, such as by withholding her license, passport, cell phone, and personal checks; (3) used her phone to track Garza's movements; and (4) attempted to befriend Garza's ex-boyfriends as a means of manipulating Garza.

Garza also contested the reliability of Dr. Singer's report. Garza asserted Dr. Singer "had significant difficulty remembering important information or at worst did not provide accurate information with respect to certain factual issues," as evidenced by Dr. Singer's "I don't recall" response to numerous questions. Garza also alleged Dr. Singer violated California Rule of Court, rule 5.220, which warrants the disqualification of her report. Specifically, Garza argued Dr. Singer (1) repeatedly concluded Garza provided conflicting information without exploring alternative explanations for Garza's responses, (2) failed to consider Garza's allegations of controlling behavior by Saint, (3) only visited the school proposed by Saint but not the

3

school proposed by Garza, and (4) failed to interview witnesses and observe relationships relevant to the minor's time with Garza while gathering that information with Saint. Garza also noted that significant ex parte communications between Saint and Dr. Singer occurred during her evaluation, Saint and Dr. Singer "shared personal information" and "used emoticons in their email exchanges," Dr. Singer accepted dinner reservations from Saint, Dr. Singer provided Saint with the opportunity to review witness statements and Garza's questionnaire without affording Garza the same opportunity, and Dr. Singer displayed bias regarding the age differential in Garza's first marriage.

In his closing statement, Saint asserted having the minor reside primarily in Michigan would provide the best stability. He noted Garza frequently moved, and asserted Garza was not reliable enough to be responsible for the minor's education or medical care. He also stated his work schedule was more amenable to caring for the minor because he could work from home whereas Garza worked long hours at a hospital. Saint emphasized Dr. Singer's findings regarding Garza's poor ability to communicate and its role in "undermin[ing] the coparenting relationship." He acknowledged problematic past behavior, but asserted such conduct has ended in part due to his work with a parenting coach.

Saint objected to Garza's representations regarding Dr. Singer's professionalism. Saint argued Dr. Singer provided relevant information to Garza, and she did not consider any materials that Saint sent to her directly. Saint further noted (1) Dr. Singer utilized emojis in communications with the parties' attorneys, and not only with Saint, and (2) Garza did not ask Dr. Singer to visit any schools.

4

The court denied Saint's request. In determining which parent should be the "school year" parent, the court noted it must consider which arrangement would be in the best interest of the minor. The court first acknowledged the significant positives of each household: the minor has "a loving, stable relationship with each parent," both of whom can meet her basic needs and "provide for her financially and comfortably house her"; neither parent suffers from substance abuse or mental health issues; and both households include older children and extended family members in close proximity.

However, the court raised concerns about Saint's past conduct toward Garza, such as his "history of abusive communication," "general dislike for the maternal grandmother and maternal family," and "willingness to manipulate others for his benefit and to injure [Garza]." Specifically, the court noted "[a] large number of abusive messages" from Saint to Garza were admitted into evidence. It further noted Saint refused to release Garza's phone number and account and withheld her wine collection in an intentional effort to "exercis[e] power and control over [Garza]." Finally, the court was "disturbed" by Saint's pattern of befriending Garza's ex-boyfriends for manipulative purposes. While the court recognized Saint took responsibility for his past messages and had worked with a parenting coach to improve his communication, the court believed Saint's conduct suggested he was "not going to be fair with [Garza] and will seek, when necessary, to actively undermine her."

While the court acknowledged concerns regarding Garza's "confusing" and "non-responsive" communication style, it noted Garza's "responses have never been abusive or disparaging towards [Saint]." The court thus found Garza "is the parent most likely to continue supporting the relationship

5

between the minor and the other parent." The court also noted that, as the school year parent, Garza's "laissez-faire follow thru in the areas of education and medical care will also need to change."

Saint timely appealed.

**DISCUSSION**

Saint asserts the trial court erred by declining to follow Dr. Singer's recommendation that he be awarded primary custody of the minor. He contends the court's decision to award primary custody to Garza was not supported by substantial evidence.

## I.  Standard of Review

" 'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)  Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610.)  "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro*, at p. 255.)

"In reviewing any order or judgment we start with the presumption that the judgment or order is correct, and if the record is silent we indulge all reasonable inferences in support of the judgment or order." (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)  The reviewing court has no power to judge the credibility of witnesses or to reweigh the evidence. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166.)  We view all factual matters most favorably to the prevailing party and do not substitute our factual determinations for those of the trial court. (*Id.* at

6

pp. 166–167.)  Appellant bears the burden of proof to show an abuse of discretion.  (*Chalmers*, at p. 299.)

## II.  Dr. Singer's Report

Saint first disputes the trial court's decision not to adopt the recommendation of the custody expert, Dr. Singer.  He asserts Dr. Singer conducted "a thorough analysis of the parenting abilities and home environments of both parents," and her recommendation of Saint as the school year parent aligns with the minor's "need for stability and continuity."

However, courts are not obligated to adopt an expert's recommendation. Although evaluations are often given great weight, they are not conclusive. (*In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, 1563.)  It is for the trial court to weigh the evidence—including the custody report—and determine what orders are in the child's best interests.  (*In re Marriage of C.D. & G.D.* (2023) 95 Cal.App.5th 378, 386 [court not " 'mere rubber-stamp' "]; *People v. Mercer* (1999) 70 Cal.App.4th 463, 466 [credibility of the experts and their conclusions were matters for trier of fact].)  Here, Garza raised numerous arguments regarding the reliability of Dr. Singer's report. While the court did not disqualify Dr. Singer in its custody order, it acknowledged Saint's efforts to "befriend[ ]" and "mislead" Dr. Singer. Accordingly, we decline to find error merely because the trial court did not adopt Dr. Singer's recommendation.

## III.  Substantial Evidence Supports the Trial Court's Order

Saint next contends the order lacked evidentiary support.  He cites to various statements in the custody report as evidence that he would provide a better home for the minor.

"For purposes of an initial custody determination, [Family Code] section 3040, subdivision (b), affords the trial court and the family ' "the

widest discretion to choose a parenting plan that is in the best interest of the child." ' [Citation.] When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by . . . considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955, citing in relevant part Family Code section 3011.)

In arguing that the court failed to adequately address these factors, Saint contends the court disregarded or underemphasized certain evidence. Specifically, Saint asserts (1) he provides a more "structured, stable environment" because Garza frequently changes residence, family members move in and out of the household, and she has a vague and contradictory communication style; (2) he provides a more stable educational environment because of Garza's changes in residence and "inconsistent approach" to education, and (3) he is proactive in supporting the minor's educational, social, and emotional needs, whereas Garza demonstrates instability with frequent relocations. He also contends Garza's home provides a more "chaotic environment," "the influence of [Garza's] extended family" raise "the potential for instability," Garza's "psychological makeup" creates instability and an inability to communicate clearly, and Garza works long hours away from home whereas Saint primarily works from home. Saint relies exclusively on Dr. Singer's report in support of his arguments.

However, the question before us is not whether the evidence might support a different result, but whether there is substantial evidence to support the trial court's order. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) On this point, Saint has failed to " 'demonstrate that

8

there is *no* substantial evidence to support the challenged findings.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Notably, Saint only discusses evidence favorable to his custody request. Such a showing is insufficient. He does not—as is required—set forth "*all* the material evidence on the point . . . . Unless this is done the error is deemed to be waived.' " (*Ibid.*, original italics.)

Moreover, Saint only mentions in passing "any history of abuse by one parent," despite it being explicitly listed in Family Code section 3011 and forming a key basis for the trial court's ruling. And Saint's discussion of "any history of abuse" only mentions "concerns about the chaotic environment in [Garza's] home, including incidents involving law enforcement."

Nowhere does he mention his own history of abuse. As explained by the trial court, the evidence "support[s] a finding that Mr. Saint has perpetrated an act/s of domestic violence on Ms. Garza within the last 5 years."[1] Specifically, the court referenced (1) "abusive messages" sent by Saint to Garza that "serve[d] no purpose other than to harass, disparage and disturb the peace of [Garza]"; (2) Saint's refusal to release her phone number and withhold her wine collection, which was "motivated by Mr. Saint intentionally needing to exercise[e] power and control over Ms. Garza"; and (3) Saint's "disturb[ing] . . . pattern of befriending Ms. Garza's previous significant others," which reflects "an element of not respecting a personal privacy boundary," occurred "out of suspicion, distrust and for other ulterior

---

[1] This finding triggered a rebuttable presumption in Family Code section 3044 against an award of sole or joint legal and physical custody to Saint. However, the court determined the presumption was rebutted by a preponderance of the evidence. But the court noted it was still "required to consider the existence of a history of abuse" for purposes of establishing a custody order.

reasons," and "indicates dishonesty and comfort in manipulating relationships and people." Saint does not contest the accuracy of these statements, and evidence in the record supports the court's findings.

In sum, Saint's challenge to the custody order amounts to a request that we reweigh the evidence, which we will not do. (*Schmidt v. Super. Ct.*, *supra*, 44 Cal.App.5th at p. 581.) Based on the foregoing, the trial court did not abuse its discretion in entering the custody order.[2]

## DISPOSITION

The order is affirmed. Garza may recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[2] Saint also asserts the trial court's order was contradictory because it noted negative attributes associated with Garza's communication and handling of the minor's education and medical needs. However, this discussion merely indicates the trial court conducted a thoughtful assessment of the positive *and* negative attributes of each household in determining the best interest of the minor.

_____
PETROU, J.

WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.


*In re Marriage of Saint and Garza*/A168860


11